# Richmond

CHARLES D. KELLY, DECEASED; RUTH DIVER KELLY, WIDOW, CLAIMANT v. PENDLETON CONSTRUCTION COMPANY, EMPLOYER, ETC.

January 24, 1944.

Record No. 2777.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Phillip C. Kelly* and *Aubrey R. Bowles, Jr.*, for the appellant.

*Fred B. Gentry*, for the appellees.

HUDGINS, J., delivered the opinion of the court.

Charles D. Kelly was fatally injured in an accident arising out of and in the course of his employment. Two women, Ruth Diver Kelly and Katherine Sawyer, each claiming to be the lawful wife of decedent, filed claims for compensation under the terms of the Workmen's Compensation law. The Industrial Commission denied the claim of Ruth Diver Kelly on the ground that she had voluntarily deserted or abandoned her husband at the time of the accident, and denied the claim of Katherine Sawyer on the ground that her marriage to deceased on April 25, 1938, in Wise county, Virginia, was bigamous and void. This award as to Katherine Sawyer is final as she did not prosecute an appeal. Ruth Diver Kelly is seeking in this court a reversal of the award as to her.

The only vital question presented is whether or not Ruth Diver Kelly, prior to the fatal accident, had abandoned her husband voluntarily within the meaning of section 40(a) of the Workmen's Compensation Act (Michie's Code 1942, sec. 1887 (40), (a) ).

The answer to the question is found in the conclusions to be drawn from the statements and testimony of Ruth Diver Kelly, as she was the only witness called to testify on this issue. Shortly after Charles D. Kelly died, an agent for the insurance carrier obtained a statement from claimant signed "Ruth Diver." This paper was signed on February 12, 1942, before claimant knew that a question had arisen as to her right to obtain compensation arising from the accidental death of Charles D. Kelly. Later, on August 18, 1942, claimant took the witness stand in her own behalf. There are some discrepancies between the statement and her testimony as to the facts and circumstances which caused the separation. These are stated in detail in the opinion of the Industrial Commission filed as a part of the record.

It is unnecessary to repeat the sordid details of the disillusionment of the young wife. Suffice it to say that on October 23, 1937, when only 16 years of age, she eloped from Jackson, Michigan, to Fremont, Indiana, and there married Charles D. Kelly. That night they returned to Jackson, Michigan, with the intention of making their home with Earl Kelly, the brother of the groom. The young married couple retired about 9:00 P. M. They had intercourse. She stated that before midnight her husband informed her that he had a "prison record." She resented this and on that account decided to leave him, which she did immediately, taking all her "things" with her to her mother's home, where she spent the rest of the night. She admitted that he "tried in every way to persuade me to stay but I refused. Afterwards, he came to our house several times and talked both to my mother and me, trying to persuade me to return, but I never did. I did not want to." Shortly thereafter Charles D. Kelly left Jackson. She made no demands upon him and never heard from him again. The written statement concludes as follows: "I left him voluntarily of my own free will. The decision was my own. My family was not in favor of the union, but I had made up my own mind not to stay with him after the first day of our marriage."

The nature of the "prison record" mentioned is not disclosed. No other reference is made to it. Without further information, such a record would not be sufficient to justify the wife in severing marital relations with her husband.

Claimant, when a witness in her own behalf, said that she left her husband because "he was very brutal and rough on our wedding night and he scared me." About a week after the marriage she accidentally met her husband on the street, when he asked her "to go back to him." She replied that she would "if he would be a little changed." He made no reply to this indefinite condition imposed but gave her $10 and walked away. She further contradicts her written statement by saying that after the marriage she never saw her husband at her home, though she admitted

that he had been there and talked to her mother, presumably on the subject of his wife's return to him.

The attorneys for claimant contend that the husband should have been more considerate of the feelings of his young, 16-year-old wife, and that he should have been more patient and urgent in his efforts to persuade her to resume marital relations with him, but they do not point out any specific thing that he could have done to·overcome his wife's sudden antipathy for·him except to say that he should not have entered a bigamous marriage within six months thereafter. If it be conceded that the husband should have exercised more patience, and perhaps more urgency, in his efforts to persuade his ·wife ·to return to him, his failure to do so did not justify the wife in repudiating all her marital obligations, ·which she did before her husband became guilty of bigamy.

If the findings of fact by the Industrial Commission are supported by substantial evidence, such findings are conclusive upon this court even though the weight of the evidence may be *contra*. However, in this case the prior inconsistent written statements were admitted as a part of the evidence without objection. But, even if such statements were excluded, the testimony of the wife is insufficient to justify this court in reversing the award of the Commission.

We fully agree with that part of the opinion of the Industrial Commission declaring: "The facts proved in the record do not show cruelty of such character as to justify the claimant in having deserted her husband. The record shows an effort on his part to restore marital relations which, however, was declined by the claimant without justifiable reasons. A preponderance of the evidence shows actual desertion by the claimant with a ˚definite intent in her mind to do so."

*Affirmed.*