## Richmond

## C.D.S. CONSTRUCTION SERVICES V. JACK D. PETROCK

April 21, 1978.

Record No. 770971.

## JACK D. PETROCK V. SLATTERY ASSOCIATES

April 21, 1978.

Record No. 771004.

*R. Craig Jennings (Slenker, Brandt, Jennings and O'Neal,* on brief) for appellant.

*J. Hunt Brasfield (Ashcraft, Gerel & Koonz,* on brief) for appellee.

*J. Hunt Brasfield (Ashcraft, Gerel & Koonz,* on brief) for appellant.

*Edward H. Grove (Brault, Lewis, Geschickter & Palmer,* on brief) for appellee.

COMPTON, J., delivered the opinion of the Court.

In this industrial accident case, we must decide whether there was credible evidence to support a finding that one rather than the other of two employers is liable for the payment of benefits for a herniated disc of the low back.

The claimant, Jack D. Petrock, injured his cervical spine as the result of a fall suffered in the course of his employment as a carpenter with appellee Slattery Associates in Arlington on October 14, 1976. Approximately six weeks later, when working in Falls Church for appellant C.D.S. Construction Services, the

claimant felt a "shock" in his low back while lifting light-weight objects, followed by severe pain. Within two weeks thereafter, he underwent surgery for a ruptured lumbar disc.

Prior to the second incident, Petrock filed a claim against Slattery for workmen's compensation benefits flowing from the first accident. After the second incident, he filed an application for a hearing against Slattery based upon change of condition alleging a reoccurrence of his initial injury. He also filed an original claim against C.D.S. alleging that the low back condition and resulting incapacity stemmed from the second incident.

Following a hearing on the consolidated claims, a deputy commissioner determined that the claimant had recovered from the injuries suffered in the first accident by the time he commenced his employment with C.D.S., and that the disabling condition occurring after the second incident was unrelated to the first accident. An award was accordingly entered against C.D.S. ordering payment of benefits resulting from the second accident, which was affirmed upon review by the full Commission. The Commission, of course, did not require Slattery to pay any benefits as the result of the second accident based on change of condition.

We granted C.D.S. an appeal. We also awarded the claimant a separate appeal against Slattery so that in case the award in Petrock's favor against C.D.S. for the disc condition is reversed, we can consider Petrock's alternative claim that he is entitled to compensation for that disability from Slattery. The parties are agreed that Petrock is entitled to benefits from one of these employers.

In the first accident, Petrock, employed by Slattery at an average weekly wage of $362, fell approximately six feet from a wall brace onto a floor, landing on his knees and striking the wall with his head and left shoulder. Based on an examination made on the day of the fall, and several subsequent examinations during the four days after the accident, Dr. Michael F. Lapadula, an Arlington general surgeon, diagnosed Petrock's injuries as: strain of the cervical spine and left shoulder; abrasions-contusions of the left shoulder, anterior chest wall, left knee and right tibia. The physician reported that on the day of the accident "palpation of the spine disclose[d] spasm and tenderness at C3-C6 and the rest of the vertebral

column [was] devoid of any findings." Five days after the accident, Petrock was seen by Dr. A. T. Ventzek, a specialist in family practice whose office was in Woodbridge. Ventzek treated Petrock for "cervical sprain and bursitis of the left knee." On November 3, 1976, he reported that Petrock could then return to work on "light duty status" until "approx. 11/18/76, when he should be able to resume full duty." In a report dated November 14, 1976, Ventzek stated that while the claimant was responding to treatment, he was "not fully recovered on his last visit here on 11/10/76."

On November 18, 1976, Petrock commenced his employment with C.D.S. at an average weekly wage of $400. During the performance of his carpentry duties on November 29, 1976, Petrock was handling light shelving boards approximately three feet long and ten inches wide. As he "bent over to pick a couple of them up" from the floor, he experienced the "shock" in his back. While "it didn't hurt real bad at the time," Petrock's foreman sent him home later in the day when the claimant tried to continue working but exhibited difficulty in walking.

Still later that same day, the claimant was hospitalized in Woodbridge. Four days thereafter, a neurosurgeon, Dr. W. A. Rouady, examined Petrock and on December 10 performed surgery on his low back, diagnosing his condition as "ruptured disc, L4-L5, left side". In a medical report filed after the decision by the hearing commissioner but before final action was taken by the full Commission upon review, the neurosurgeon wrote:

"it is my opinion that Mr. Petrock's damage to the disc was caused by his first injury which he received on October 14, 1976.

"Because the severity and the dynamic of the injury he received at that time are characteristically known to cause a ruptured disc.

"The second injury was of minimal degree to cause any damage."

The claimant returned to his family practitioner, Dr. Ventzek, during the month following the operation, with continued complaints of low back discomfort. In February 1977, this physician reported:

"Apparently this patient sustained injury to the low back on 10/14/76 and was not aware of any low back discomfort, although his wife complained that he had made some references to low back discomfort. However, he did not call this to my attention because the cervical sprain was so severe, and overwhelming.

"The patient returned to work for the new company CDS Construction, and apparently still had some discomfort in the neck region when the second accident occurred while he was lifting a light piece of lumber. At this time he denied any severe low back pain that would have brought on the pain in the low back. Therefore, it is assumed that the patient ruptured the disc in the low back during the first accident as it was quite traumatic when he was standing on a wall bracer and fell on 10/14/76."

On March 11, 1977, Petrock was examined during the course of a "neurological consultation" by Dr. Norman H. Horwitz of Washington, D.C., who reported that the claimant "complains of residual low back and neck pain which he dates from injuries sustained on 14 October 1976." Horwitz concluded his report by stating:

"It is impossible for me to make a determination concerning the relationship of the first injury to his present low back problem. This crucial information can only be obtained from the initial treating physician who had an opportunity to interview the patient and examine him prior to the second injury."

Five days later, and the day before the hearing on March 17, 1977, Ventzek again wrote to Petrock's attorney, apparently not having examined his patient since writing the February report, *supra.* He repeated his opinion that the ruptured disc "probably stemmed from the first accident as it was much more traumatic than the second accident." He further wrote that:

"While he was being treated for the first accident there were no complaints referable to the low back as he was off work and resting while undergoing therapy for his neck injury, and his attention was focused on his neck. However, his wife did confide that he did report some low back discomfort to her following the first accident.

"Of course, this is only my personal opinion as we have also seen people simply bend over to pick up a piece of paper and rupture a disc without preceding trauma, so that the light piece of lumber he attempted to pick up may have been equally responsible, but I favor the former episode leading to the ruptured disc."

During the hearing, the claimant and his wife both testified that between the first and second incidents, Petrock had "trouble" but "not a lot" in the lumbar region. He testified that because he had to "swing" his injured leg, which he could not bend because of a swollen knee, he in fact experienced low back pain after the fall. He stated that the pain was not "severe" but that the back "bothered" him when he "had to limp with this leg." He also indicated that during the six days he worked for C.D.S. before the second incident, he did not have "any trouble" with his low back and that he performed his regular duties "all right."

To support the determination that the disabling condition which occurred at the time of the second accident was unrelated to the first, the deputy commissioner, in written opinions adopted on review by the full Commission, principally relied on three aspects of the evidence, which consisted of written medical reports and the testimony of Petrock and his wife. First, the Commission pointed to Lapadula's findings made on the day of the first accident that the claimant's entire vertebral column, except the cervical area, was "devoid of any findings." Next, the Commission noted that prior to the second accident, Petrock "received no treatment and made no complaint to the physicians about his low back". Third, the Commission found that during the time he was employed by C.D.S. before the second accident, Petrock "performed the full duties of carpentry work ... without any appreciable difficulty." Summarizing their decision to award benefits in behalf of the claimant against C.D.S. for total work incapacity resulting from the second accident, the Commission stated:

"We do not believe that this claimant experienced any appreciable difficulty with his low back because of his own testimony and the fact that on October 14, 1976 Dr. Lapadula found only tenderness in the cervical portion of the spine. He obviously examined the entire back in that he advised the rest of the vertebral column was devoid of any findings."

The question presented on appeal is whether the evidence is uncontroverted that the first accident caused the ruptured disc. If it is, the award against C.D.S. is erroneous and Slattery is obligated to pay benefits for the second incident. If, on the other hand, the credible evidence conflicts, affirmance is required.

C.D.S. argues there "is no medical evidence in the record anywhere ... controverting the opinions of [Drs. Ventzek and Rouady]." It contends that "the Commission had to resort to speculation in order to presume a causal relationship between the event of November 29, 1976, and the claimant's ruptured disc. This was done in the face of preponderating evidence from the treating physicians that refuted such a conclusion."

■ While we agree that the weight of the evidence is in favor of a finding that a cause-and-effect relationship existed between the first accident and the herniated disc, we do not agree that the Commission's finding to the contrary is without credible evidence to support it. And a finding by the Commission upon conflicting facts as to causal relationship is conclusive and binding on this Court, absent fraud, when such determination is supported by competent, credible evidence. Code § 65.1-98. *See Johnson* v. *Capitol Hotel, Inc.*, 189 Va. 585, 590, 54 S.E.2d 106, 108-09 (1949); *Kelly* v. *Pendleton Construction Co.*, 182 Va. 191, 194, 28 S.E.2d 621, 623 (1944).

■ Under this evidence, we think the Commission was justified in concluding that Petrock had recovered from the injuries suffered in the first accident and that the immediate, precipitating cause of the disc problem was the second accident. On brief, C.D.S. does not address the medical conclusion reached on the day of the first accident that the vertebral column, except at the site of the third to sixth cervical vertebrae, was "devoid of any findings." There are two relevant and logical inferences which flow from that conclusion. They are (1) that the physician examined the low back at the time and (2) that he determined no injury had occurred on that day in that area of the spine. To be coupled with that conclusion is the evidence that Ventzek, an attending physician, permitted the claimant to "resume full duty" on November 18; that Petrock returned to work on that day at an increased salary; and, as the Commission noted, that he fully performed his assigned duties for six working days without any physical difficulty. In addition, as the Commission also said, the record discloses that during the period before the

second accident, the claimant did not complain to any physician of pain in the low back. As to the later statements by the Petrocks that he did, in fact, experience low back pain after the first accident (including the claimant's statement to that effect to Dr. Horwitz), the Commission properly could have decided that such discomfort at that time was related to the effort required for the claimant to "swing" and manipulate a leg made stiff by a swelled knee, and not to a disc injury.

■ It is true that the two treating physicians, Ventzek and Rouady, opined that the disc injury resulted from the fall. But at least one of those opinions is not unequivocal. In his February report, *supra*, Ventzek "*assumed*" that the low back problem was caused in the first accident because "it was quite traumatic", and not because of any objective physical findings which he made. And when he repeated his opinion in the March letter, *supra*, Ventzek was even less definite. After restating his view, he followed with this disclaimer: "Of course, this is only my personal opinion as we have also seen people simply bend over to pick up a piece of paper and rupture a disc without preceding trauma, so that the light piece of lumber he attempted to pick up may have been equally responsible . . . ." Furthermore, even though great weight should be given to the evidence of an attending physician, his opinion is not binding on the Commission. *Williams* v. *Fuqua,* 199 Va. 709, 714, 101 S.E.2d 562, 566-67 (1958). The probative weight to be accorded such evidence is for the Commission to decide; and if it is in conflict with other medical evidence, the Commission is free to adopt that view "which is most consistent with reason and justice." 199 Va. at 714, 101 S.E.2d at 567.

For these reasons, we hold there was credible evidence to support the award in favor of the claimant against C.D.S. Consequently, the judgment of the Commission in these two cases will be

*Affirmed.*