COURT OF APPEALS OF VIRGINIA

Present:  Judges Fitzpatrick, Overton and Senior Judge Duff
Argued at Alexandria, Virginia


FAIRFAX COUNTY SCHOOL BOARD

MEMORANDUM OPINION[*] BY
v.      Record No. 2771-96-4      JUDGE JOHANNA L. FITZPATRICK
JUNE 17, 1997

LISA M. LEWIS PUEBLA

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Michael N. Salveson (Hunton & Williams, on
briefs), for appellant.

Thomas W. Ullrich for appellee.


On appeal from the decision of the Virginia Workers'
Compensation Commission awarding Lisa Puebla (claimant) benefits,
Fairfax County School Board (employer) contends that the
commission erred in (1) imposing an improper burden of proof on
employer and (2) finding that claimant's medical problems are
causally related to her industrial accident.  For the following
reasons, we reverse the decision of the commission.[1]

BACKGROUND

On October 26, 1993, claimant suffered minor injuries when
the school bus in which she was riding as an attendant stopped
suddenly and caused her to fall.  She suffered a contusion to the
head, dizziness, contusions to both knees, and a cervical strain.

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

[1]Because we reverse on the causation issue, we do not
address the burden of proof issue for purposes of this appeal.

The commission found this injury to be compensable, and awarded her benefits.

Following her accident, claimant received treatment from several physicians. Dr. Kerry Lewis (Dr. Lewis) treated claimant for her cervical injury. His notes following claimant's first visit on November 1, 1993 reflect the following impressions:

> Exam of skull reveals slight tenderness in the right temporal area. There is no significant soft tissue swelling . . . . Neck-supple w/ good ROM. . . . Chest wall reveals tenderness along the left anterior ribcage . . . . Abd-massively obese, nontender, no organomegaly. . . . Exam of left knee reveals tenderness . . . . There is good ROM w/o instability.

On March 11, 1994, Dr. Lewis concluded that he "[w]ould feel at this point that [claimant] has no physical limitations based on her prior neck injury . . . . I feel there are no physical limitations related to her neck injury currently." He reiterated this conclusion in correspondence dated April 12, 1995 to Linda Glassco, claims specialist: "[A]t that time that [claimant] exhibited no significant physical limitation based on her prior neck injury. I felt [] [claimant] was fully capable of doing secretarial work which required tasks such as filing or sitting at a desk. I have not had contact with her or spoken to her since that last visit." Finally, Dr. Lewis stated as follows:

> I believe [claimant] did suffer a cervical, thoracic and lumbar strain as a result of her accident on 10/26/93. <u>It appears that [she] has, in general, recovered from her cervical and lumbar strain. There is no objective evidence of current injury.</u> . . . I feel that [claimant] is capable of performing sedentary

2

tasks such as secretarial work.  I do not feel she is capable of further work as a school bus attendant.  I feel the inherent instability of moving about on a traveling bus is not in her best interest and leaves her open to further falls and possible additional injury.

(Emphasis added.)

Claimant's orthopedic surgeon, Dr. Rubin D. Cabrera (Dr. Cabrera), examined her and on November 5, 1993, he noted that she was overweight, and at the time of her accident weighed "about 312 lbs."  He diagnosed claimant with "contusion of head. Dizziness.  Contusion of both knees with more pain on the left than before.  Obesity -- thyroid problem."  On February 4, 1994, Dr. Cabrera found that "[e]xamination of the knee revealed that examination is still difficult because of the thickness of the subcutaneous fat in this patient.  There is a normal ROM.  There is diffuse tenderness.  Patient is walking, using a cane."  Dr. Samuel R. Sawmiller examined claimant on February 8, 1994, for a second opinion regarding her knees.  He concluded as follows:

This patient has pre-existing arthritis in her knee, primarily patella femoral, secondary to her weight.  She has obviously sprained the left knee and this has set off a vicious cycle of pain, synovitis, aggravated by the weight which has caused her to do most of the work with the right knee that has now made the right knee sore.

There is little question that this patient had problems although asymptomatic prior to the injury and that these knees will never, ever be resolved to normal knees.

It is my feeling that this patient should probably not be back in a school bus at any time in the foreseeable future just

3

because of the difficulty of dealing with a moving bus and getting in and out through the entryway.

Additionally, he noted that "[t]he only constructive suggestion I have is weight loss but I see no reason to offer further injections or orthopaedic treatment of this knee" and that "[a]t the present time I don't see how this patient can work on a school bus. She will be employable at a sedentary type job where she does not have to stand or walk."

Dr. Thomas Fogarty, a psychiatrist, examined claimant on March 23, 1994, and determined that:

[T]his is a 27 year old woman who has a prior history of significant depression which had gone untreated. She is currently on a complicated regimen of medications, which she cannot take due to side effects. . . . It is very difficult to determine what is causing her headache at this time. It could very well be improved with alteration of her medicine or regimen.

He later examined claimant upon her admission to the hospital on October 16, 1994 for seizures. He found that:

[T]he patient had significant illness behavior which was compounded by her psychosocial situation and family dynamics. Approximately three days prior to discharge, she developed a generalized shaking and at times unresponsive and invariable way [sic]. She was seen in neurologic consultation as well as by the house physician, who agreed that the patient probably had pseudo seizures. As the behavior persisted, it appeared to be goal directed with secondary gain suggesting a conscious and willful aspect of her behavior consistent with malingering . . . . [I]t was felt that continued inpatient hospitalization would lead to further regression in her behavior . . . . It became clear that she did not want

4

to return to her part time position. It was emphasized that she could not return to full time employment at this point as a bus aide, nor could she be expected to be fully compensated without working . . . .

. . . She was discharged with a diagnosis of cervical and lumbar myofascial pain, bilateral knee pain of unclear etiology, prescription medication abuse, somatoform pain disorder and atypical depression rule out conversion disorder versus malingering.

On December 8, 1995, more than two years after claimant's compensable injury, Dr. Cabrera saw claimant for yet another complaint. His notes reflect the following events:

[Claimant] says that on December 1, 1995, both of her knees locked up for about 6 minutes. Since that day, they occasionally give out and she has constant pain. . . .

\* \* \* \* \* \* \*

Examination shows that she has good ROM of both knees. She has no crepitation and no instability of the collateral ligaments. I could not find any evidence of effusion. . . .

I had told [claimant] during the examination that I did not see any relationship between the accident and her present symptoms. I believe she needed investigations.

(Emphasis added.) Finally, Dr. Cabrera examined claimant on January 18, 1996, and concluded that both knees were "normal." Dr. Cabrera further indicated that claimant's initial compensable knee sprain had healed, that the symptoms claimant complained of "are subjective symptoms, but they could have a pathological basis due to [claimant's] overweight," and that she could "return

5

to a sedentary type of work from the orthopedic point of view and her knee problems."

On March 14, 1996, employer requested the commission to suspend or terminate claimant's benefits, on the grounds that her disability at the present time was unrelated to the industrial accident. Upon review, the deputy commissioner determined that claimant's benefits should be reinstated. The deputy commissioner found as follows:

> A review of the evidence leads us to conclude that the employer has failed to establish that [claimant's] compensable injury no longer contributes to her disability. While it is clear from the medical records that the employee suffers from several medical problems, the records further show that as a result of her compensable injury, the employee has sustained knee problems complicated by a pre-existing condition.

The full commission agreed that the "employer's evidence fails to show she has recovered from other injuries of the accident" and found that,

> the fact that the claimant's condition has generally healed does not show that the injury in question has resolved. Neither does the absence of objective evidence necessarily mean there is no actual injury
>  . . . .
>
>       \*     \*     \*     \*     \*     \*     \*
>
> The burden is on the employer, as the moving party in these proceedings, to prove that the medical evidence preponderates to establish that the claimant's disabling medical problems are unrelated to her work injury. We agree with the Deputy Commissioner that the employer failed to satisfy its burden of proof in this case, and the June 7, 1996 Opinion is AFFIRMED.

6

CAUSAL CONNECTION

Employer argues that no credible evidence supports the commission's finding that claimant's ongoing medical problems are causally related to the industrial accident. We agree.

In its application for review of claimant's award on the grounds of change in condition, the burden was upon employer, the party alleging such change, to prove its allegations by a preponderance of the evidence. See Great Atlantic & Pacific Tea Co. v. Bateman, 4 Va. App. 459, 464, 359 S.E.2d 98, 101 (1987).

The commission's finding with respect to the casual relationship between an accident and an injury is generally binding on appeal, if based on credible evidence. C.D.S. Constr. Services v. Petrock, 218 Va. 1064, 243 S.E.2d 236 (1978); Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989). Additionally, if reasonable inferences may be drawn from credible evidence, they also will be upheld on appeal. See Tumlin v. Goodyear Tire & Rubber Co., 18 Va. App. 375, 378, 444 S.E.2d 22, 23 (1994). Causation is established when it is apparent to the rational mind upon consideration of all the circumstances that a causal connection exists between the work conditions and the resulting injury. See, e.g., Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938); Marketing Profiles, Inc. v. Hill, 17 Va. App. 431, 434, 437 S.E.2d 727, 729 (1993).

It is undisputed that, on October 26, 1993, claimant

suffered minor injuries to her knees, head, and spine in a work-related accident. It is also undisputed that claimant suffers from obesity and ailments related to her weight condition. However, the record unequivocally establishes that all of claimant's treating physicians determined that any effects of claimant's industrial accident have long since dissipated. Under familiar principles, the opinions of treating physicians are entitled to great weight. See, e.g., Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 339 S.E.2d 570 (1986). Thus, we hold that there is no connection between the work-related injuries and claimant's current complaints.

Dr. Lewis' records indicate that, as of March 11, 1994, claimant had "no physical limitations related to her neck injury" that occurred on October 26, 1993, and that she had generally "recovered from her cervical and lumbar strain." Dr. Sawmiller's diagnosis of claimant as of February 1994 was that she had "pre-existing arthritis in her knee" and that "this patient had problems . . . prior to the injury." He also found that claimant's "knees will never, ever be resolved to normal knees." Dr. Fogarty examined claimant for possible neurological problems, and found that "[i]t is very difficult to determine what is causing her headache" and that "[t]he patient had significant illness behavior . . . [that] appeared to be goal directed with secondary gain suggesting a conscious and willful aspect of her behavior consistent with malingering . . . ." He

determined that claimant's ultimate diagnosis upon discharge was "cervical and lumbar myofascial pain, bilateral knee pain of unclear etiology, prescription medication abuse, somatoform pain disorder and atypical depression rule out conversion disorder versus malingering."  Finally, Dr. Cabrera determined that claimant's December 1995 knee complaints "had no relationship" to her earlier work-related injury.  He also found that claimant's initial compensable knee sprain had healed.

Accordingly, the evidence supports employer's allegation of change in condition.  No credible evidence and no inferences therefrom support the commission's conclusion that claimant's current complaints are causally related to her October 26, 1993 accident.  Rather, the medical evidence confirms that claimant's obesity and related difficulties existed prior to her compensable injury and would "never, ever" be "resolved," regardless of the healing of her October 1993 injury.  The evidence fails to establish that claimant's current problems are causally related to her 1993 accident.

The decision of the commission is reversed.

Reversed.

10