COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Annunziata and Senior Judge Duff
Argued at Alexandria, Virginia

FAIRFAX COUNTY SCHOOL BOARD

MEMORANDUM OPINION[*] BY
v.    Record No. 3010-98-4          JUDGE ROSEMARIE ANNUNZIATA
                                         OCTOBER 19, 1999
SALLY ANN PRESTI


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Michael N. Salveson (Hunton & Williams, on
briefs), for appellant.

Julie H. Heiden (Koonz, McKenney, Johnson,
DePaolis & Lightfoot, on brief), for
appellee.


The Fairfax County School Board ("employer") appeals the

determination of the Workers' Compensation Commission that Sally

Ann Presti's ("claimant") generalized dystonia is causally

related to her industrial accident of October 23, 1990.  Employer

contends:  1) that there is no credible evidence to support the

commission's determination and 2) that the commission imposed an

incorrect burden of proof upon employer.  We find no error and

affirm the commission's determination.

I.

FACTUAL BACKGROUND

On October 23, 1990, claimant, a preschool teacher, fell as

she was entering her vehicle, which was parked in the driveway of

a student she was visiting in the course of her employment.

After picking herself up, claimant drove to the school where she

_____

[*] Pursuant to Code § 17.1-413, recodifying Code

was required to report and notified employer of the incident.  A co-worker took claimant to the hospital, where she received six stitches on her head.  In addition to the laceration on her head, claimant suffered a sore and stiff back and neck.  Later that day, claimant returned to work and finished teaching her afternoon class.

During the week following her fall, claimant's symptoms did not improve.  On November 21, 1990, Dr. Thomas Calhoun began treating claimant, who complained of neck and back pain at that time.  During the course of treatment, claimant's back pain did not abate, although she received some relief from her neck pain.

On October 21, 1991, Dr. Calhoun commented upon the difficulty that claimant had ambulating.  At that time, "[h]er ambulation [was] easier although she still walk[ed] with a detectable limp."  During the time he treated claimant, Dr. Calhoun observed that claimant experienced only brief periods of relief and could not walk without considerable pain.[1]

In September 1992, claimant was referred to Dr. Stephen Levin, a specialist in low back pain and pelvic mechanics.  According to Dr. Levin's examination, claimant had to use a cane to assist in ambulation and walked awkwardly with a limp.  Dr.

§ 17-116.010, this opinion is not designated for publication.

[1] Due to the continuing physical problems experienced by the claimant, on October 23, 1991 she was referred to Dr. Paul Salbert, who prescribed additional courses of physical therapy over the following year.  While he ultimately opined that the claimant's dystonia was unrelated to her 1990 accident, we note the commission's observation that Dr. Salbert is a general practitioner, as well as his concession that a neurologist should make a final determination as to the cause of claimant's condition.

Levin also prescribed a course of physical therapy for claimant. Claimant's condition remained essentially unchanged until December 1992, when some improvement occurred in her gait pattern. On November 18, 1992, Dr. Levin indicated that claimant continued to use a cane and had "exquisite tenderness in both sacrospinous ligaments."

On February 11, 1993, Dr. Levin noticed that claimant continued to exhibit a "very awkward gait pattern [in which] she has to watch her feet and see where she is going." He also observed that claimant displayed "unusual movements of her hands as well," noting that "it does not seem to be the soreness that is creating the abnormal gait, but something else."

On February 25, 1993, Dr. Levin noted that claimant believed that she would be able to walk normally if she could "get rid of the pain." However, her pain did not abate, and on March 25, 1993, claimant continued to demonstrate spastic, uncoordinated patterns of movement.

On October 21, 1997, the claimant also was evaluated by Dr. Stephen Grill, a neurologist practicing in Columbia, Maryland. Dr. Grill observed, inter alia, that a person suffering a movement disorder such as dystonia may remain undiagnosed for years, unless the person is evaluated by a doctor experienced in treating such disorders.

Claimant has been monitored by the National Institutes of Health since August, 1993, and she has received treatment from Dr. Michael Knable since November, 1995.

II.

- 3 -

It is well established that on appeal, the factual findings of the commission are conclusive and binding upon the Court of Appeals, if those findings are supported by credible evidence. See Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688, 376 S.E.2d 814, 187 (1989) ("The actual determination of causation is a factual finding that will not be disturbed on appeal if there is credible evidence to support the finding."); Commonwealth v. Powell, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986); see also Code § 65.2-706. In particular, a finding by the commission on the causal relationship between an accident and an injury is binding if based on credible evidence. See C.D.S. Constr. Services v. Petrock, 218 Va. 1064, 1070, 243 S.E.2d 236, 240 (1978).

In the present case, the commission reviewed a considerable amount of expert testimony, outlined supra, and made the following findings of fact with respect to the conflicts in the evidence:

> Based on the uniqueness and complexity of dystonia, we find it reasonable that [the claimant's] initial physicians linked the disturbance to back and [sacroiliac] joint problems without further investigation into another source of the symptoms. The medical record shows the physicians' uncertainty as to the complainant's continuing symptoms, despite seemingly thorough and appropriate treatment. We are also persuaded by Dr. Grill's observation that a person suffering from a movement disorder may go undiagnosed for years, unless detected by a physician experienced in the field. Dr. Salbert's opinion that the dystonia is unrelated to the 1990 accident is illustrative. Dr. Salbert, a family practitioner, treated the claimant for [sacroiliac] joint dysfunction, and his

- 4 -

initial notes reflect that she exhibited an antalgic gait.  He did not order an MRI until she complained of fine movement coordination difficulties.  While Dr. Salbert expressed concerns with causality in his deposition of February 24, 1998, he conceded that a neurologist should make a causation diagnosis.  Moreover, Dr. Knable did not completely discount a causal connection, as the Commission observed.  He stated on November 30, 1995, that he could not "completely exclude the possibility that the trauma that Ms. Presti suffered is not related to her dystonic movement disorder. . . ."

In its review of the evidence, the commission resolved the various conflicts in that evidence and found credible evidence establishing a causal relationship between the claimant's work-related trauma and the dystonic symptoms she experienced. Because the commission's finding was based upon evidence that appears credible, we will not disturb that finding on appeal. See C.D.S. Constr. Services, 218 Va. at 1070, 243 S.E.2d at 240; Powell, 2 Va. App. at 714, 347 S.E.2d at 533.  While there is conflicting medical evidence in the record, that fact in itself is not enough to warrant a reversal of the commission's findings.

For the foregoing reasons, we affirm the commission's decision.

Affirmed.

- 5 -