COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Elder and Annunziata
Argued at Richmond, Virginia


COMMONWEALTH OF VIRGINIA/
 CENTRAL VIRGINIA TRAINING CENTER

                                        OPINION BY
v.    Record No. 0458-01-2       JUDGE JERE M. H. WILLIS, JR.
                                      DECEMBER 18, 2001
DOROTHY McGEE CORDLE


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Scott John Fitzgerald, Assistant Attorney
          General (Mark L. Earley, Attorney General;
          Judith Williams Jagdmann, Deputy Attorney
          General; Gregory E. Lucyk, Senior Assistant
          Attorney General; Catherine Crooks Hill,
          Assistant Attorney General, on brief), for
          appellant.

          Craig B. Davis (Geoffrey R. McDonald &
          Associates, on brief), for appellee.


     The Central Virginia Training Center and the Commonwealth

of Virginia (jointly referred to as "employer") appeal a

decision of the Workers' Compensation Commission awarding

benefits to Dorothy McGee Cordle for aggravation of an earlier

compensable knee injury.  The employer contends that the

commission erred in holding that Cordle's October, 1999 injury

was a compensable consequence or change in condition of her

August, 1998 compensable knee injury.  It argues that the

medical evidence failed to prove a causal connection between the

two injuries.  We affirm the commission's decision.

## I.  BACKGROUND

On appeal, "[d]ecisions of the commission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court."  Manassas Ice & Fuel Co. v. Federated Mutual Ins. Co., 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991) (citing Code § 65.1-98; McCaskey v. Patrick Henry Hosp., 225 Va. 413, 415, 304 S.E.2d 1, 2 (1983)).[1]  "The fact that contrary evidence may be found in the record is of no consequence if credible evidence supports the commission's finding."  Id. (citing Russell Loungewear v. Gray, 2 Va. App. 90, 95, 341 S.E.2d 824, 826 (1986)).  We view the evidence in the light most favorable to the party prevailing below.  Creedle Sales Co. v. Edmonds, 24 Va. App. 24, 26, 480 S.E.2d 123, 124 (1997).

## A.  THE INJURIES

On August 14, 1998, while working at the Central Virginia Training Center, Cordle injured her left knee when she caught a falling patient.  On August 24, 1998 Dr. Gautham Gondi diagnosed a symptomatic plica, chondromalacia of the patella, and lateral patellofemoral compression syndrome.  On September 23, 1998 he also diagnosed a medial meniscal tear.  On September 28, 1998 Dr. Gondi released Cordle to regular work.  Cordle stated that

---

[1] Code § 65.1-98 was recodified in 1991.  The present provision can be found at Code § 65.2-706.

- 2 -

her knee was much better at that time and denied any giving way or buckling. Nevertheless, she continued to experience some discomfort. Her last medical treatment for that injury was in December, 1998 or January, 1999.

On October 21, 1999, Cordle's knee popped and buckled as she carried a mop and bucket up a stairway. She fell to the floor. She went to the emergency room and returned to Dr. Gondi's care.

During examination by Dr. Gondi, Cordle described the pain as different from the pain she had experienced in August, 1998. Although it was in the same location, it was more severe, and she was unable to walk. Dr. Gondi diagnosed left knee patellofemoral chondromalacia and bilateral patellofemoral compression syndrome. He reported that "[the] event that she describes from October 21, 1999 did cause an aggravation of her previous left knee injury. It was not a new diagnosis, but it was a new event." On December 21, 1999, he returned Cordle to medium work with restrictions.

On January 12, 2000, after the employer denied her benefits, Cordle stopped treating with Dr. Gondi. She began seeing Dr. Anthony J. Shaia, whom she chose from a panel of physicians furnished by the employer. Dr. Shaia agreed with Dr. Gondi's diagnosis. On April 6, 2000, he placed Cordle on restricted duty.

On May 4, 2000, Dr. Shaia reviewed the results of a recent MRI, which revealed a torn medial meniscus and the absence of an anterior cruciate ligament. Dr. Shaia concluded that arthroscopic surgery would be appropriate, but actual reconstruction would not be necessary. Cordle was removed from work from May 4, 2000 to May 25, 2000.

A second opinion was requested by the employer, and Cordle was examined by Dr. John A. Cardea on June 16, 2000. Dr. Cardea agreed with Dr. Shaia's diagnosis. He reported that Cordle's "medial meniscus problem [relates] to the initial injury. . . . [T]his is an exacerbation of a pre-existing condition or it may even be the first symptoms of a pre-existing condition." He concluded that Cordle should have arthroscopic surgery to remove the damaged portion of the medial meniscus.

### B. PROCEDURAL HISTORY

On April 19, 1999 Cordle received an award of temporary total disability benefits for the August 14, 1998 injury. Following the October 21, 1999 injury, she filed for temporary total disability benefits, claiming (1) that she had suffered a compensable change in condition of the August 14, 1998 injury; or, in the alternative (2) that she had suffered a new compensable injury on October 21, 1999.

The deputy commissioner held that on October 21, 1999, Cordle "was exposed to no specific risk of her employment" and

- 4 -

that she did not suffer on that occasion an injury by accident within the scope of the Workers' Compensation Act.  Based on the recorded medical history and the various diagnoses between October, 1999 and April 6, 2000, the deputy commissioner found that changes had occurred in the condition of Cordle's left knee.  However, he concluded that those changes were not the proximate result of the August 14, 1998 incident.  He denied benefits for the October 21, 1999 incident.

On appeal, the full commission affirmed the deputy's finding that the October 21, 1999 incident was not a new compensable injury.  However, it held that the October, 1999 incident aggravated Cordle's prior compensable injury.  It remanded the case to the deputy commissioner to enter an award for the appropriate time periods.  The employer appeals.

## II.  <u>ANALYSIS</u>

The issue on appeal is whether the October, 1999 knee injury caused a change of condition by aggravation of Cordle's compensable August, 1998 injury.  If so, Cordle is entitled to compensation.  The employer contends that the medical evidence is insufficient to establish this causal connection.

When an employee files a change of condition application seeking reinstatement of disability benefits, two questions arise:

> (1) has there been a change in the
> employee's capacity to work; [and] (2) if

so, is the change due to a condition
causally connected with the injury
originally compensated.

Kings's Market v. Porter, 227 Va. 478, 483, 317 S.E.2d 146, 148 (1984). Unquestionably, Cordle's capacity to work changed as a result of the October, 1999 injury. On April 6, 2000, she was placed on restricted work duty, and was removed from work duty for the period of May 4 to May 25, 2000. The issue is whether this disability was causally connected to her original compensable injury.

When a primary injury . . . is shown to have
arisen out of the course of employment,
every natural consequence that flows from
the injury is compensable if it is a direct
and natural result of a primary injury.

Leonard v. Arnold, 218 Va. 210, 214, 237 S.E.2d 97, 99 (1977).

Credible evidence supports the commission's finding that Cordle's disability following the October, 1999 injury was a natural consequence flowing from her compensable August, 1998 injury. Cordle had no knee problems prior to the August, 1998 accident. Following the completion of treatment for that injury, she continued to have pain in her knee when climbing stairs or when standing for long periods. Dr. Gondi stated unequivocally that the October, 1999 incident was an aggravation of Cordle's original injury.

Dr. Cardea, an independent examiner selected by the employer, wrote that Cordle's pain flared when she returned to

full duty work and that "this is an exacerbation of a pre-existing condition or it may even be the first symptoms of a pre-existing condition." These facts viewed as a whole support the commission's determination that the October, 1999 incident was an aggravation of Cordle's 1998 injury.

The commission's determination of causation is a factual finding that will not be disturbed on appeal if supported by credible evidence. Corning, Inc. v. Testerman, 25 Va. App. 332, 339, 488 S.E.2d 642, 645 (1997). The decision of the commission is affirmed.

Affirmed.