COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Beales and Senior Judge Bumgardner
Argued at Alexandria, Virginia


BEAM BROTHERS TRUCKING, INC. AND
  UNITED STATES FIRE INSURANCE COMPANY
                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 2050-11-4                       JUDGE RANDOLPH A. BEALES
                                                          MAY 8, 2012
LON EMORY BOWERS


                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Joseph F. Giordano (Tyler O. Prout; Semmes, Bowen & Semmes,
              P.C., on briefs), for appellants.

              Alaina M. Dartt (Ashcraft & Gerel, LLP, on brief), for appellee.


       The Workers' Compensation Commission (the commission) unanimously affirmed the

deputy commissioner's award to Lon Emory Bowers (claimant) for medical benefits and

temporary total disability benefits for a back injury resulting from a workplace accident while

claimant was working for Beam Brothers Trucking (employer) on August 18, 2010.  Although it

is undisputed that claimant had a pre-existing back condition, the commission found that

claimant "sustain[ed] additional injury as a result of" the workplace accident and that "claimant's

ongoing treatment and disability were related to the aggravation" of his pre-existing back

condition.  Therefore, the commission concluded that "claimant's ongoing treatment and

disability are reasonable, necessary and causally related" to claimant's August 18, 2010

workplace accident.

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On appeal, employer raises five related assignments of error in which employer argues that the commission erred in relying on Dr. Bernard Stopak's assessment of claimant. Instead, employer contends that the commission should have credited the opinion of Dr. Alan Fergus. We disagree with employer's arguments, and, for the following reasons, we affirm the commission.

## I. BACKGROUND

Procedural Facts

On August 18, 2010, claimant slipped on the floor of the trailer of his work truck, falling about five feet to the ground. Claimant immediately felt pain in his lower back, hips, neck, and right shoulder and was taken by ambulance to the hospital. Claimant timely sought an award for medical benefits and temporary total disability benefits from the date of the accident[1] and continuing. Following an evidentiary hearing, the deputy commissioner found that claimant suffered a compensable injury to his back and awarded medical benefits and temporary total disability benefits. The full commission unanimously affirmed the award, concluding that "the evidence sufficiently proves that the claimant suffered a material aggravation of his pre-existing back condition as a result of his fall, and the employer is responsible for this material aggravation of a pre-existing condition."

---

[1] The details of the accident are not at issue, but they are as follows: On August 18, 2010, claimant suffered a fall in the course of his employment as a truck driver with the employer. Prior to leaving with his load, claimant noticed that the back door of the trailer that he had been assigned had been left open. He climbed into the trailer and attempted to secure the backdoor, which rolls down like a garage door. A strap is attached to the door for this purpose, but the strap on this particular trailer had torn and was much shorter than usual. As claimant stretched to reach it, he slipped on the floor of the trailer, wet and slick from rain, and fell about five feet off the trailer to the ground. Claimant immediately felt pain in his lower back, hips, neck, and right shoulder and was taken by ambulance to the hospital.

Pre-Accident Medical Treatment

Claimant had suffered from back pain prior to the August 18, 2010 workplace accident and had sought medical treatment for his pain. Claimant was able to continue full-time employment without restrictions up until the accident. Claimant first complained of and treated his back pain when he underwent a radio frequency ablation procedure in 2005. He sought treatment from Dr. Fergus on June 30, 2008. Dr. Fergus saw claimant that one time, then discharged his care to pain management. Dr. Fergus noted that claimant's back pain had become "progressive" in May 2008. Claimant did not see Dr. Fergus again until after his work accident. Claimant treated with Dr. Michael J. Poss and his staff off and on from September 2008 until August 2010. In July 2010, Dr. Poss prescribed an MRI and referred claimant to follow-up with Dr. Fergus.

Post-Accident Medical Treatment

Claimant saw Dr. Fergus on August 23, 2010, a week after his accident. Dr. Fergus referenced claimant's pre-existing back problems. Though claimant advised Dr. Fergus of his accident, Dr. Fergus did not mention it in his notes, but he did take claimant out of work. Dr. Fergus discharged claimant for treatment with pain management. Claimant never saw Dr. Fergus again.

Claimant saw Dr. Stopak on November 9, 2010. Dr. Stopak conducted a physical examination of claimant, which included the taking of a new MRI. According to claimant's testimony, Dr. Stopak also looked at claimant's MRI from before the accident. Dr. Stopak thoroughly reviewed and analyzed claimant's past medical records, noting:

> *He did have a repeat MRI which I reviewed in the office.* This was done on 09/10/2010 which I reviewed. *I did feel that there was an increase in the extent of the ruptured disk at the L5-S1 level* which goes inferiorly around 5 mm from the annulus and it does encroach on the right S1 nerve root with foraminal narrowing. I also felt again that there may be a slip at the L3-L4 level. The report states

that there was no significant interval change from the previous study but *I do feel that this one, as regards to the extent of the disk rupture, is slightly enlarged.*

(Emphasis added).  Dr. Stopak concluded:

It should be mentioned in discussion that although the patient had a preexisting condition, this was handled very well with his ablation therapy and then subsequent conservative management.  The disk was identified earlier prior to this last scan but at that time *I feel that there had been a <u>homeostatic equilibrium</u> established* between any changes in his spine and disk relative to the bony structure of his spine inclusive of a spinous process, his lamina ligaments, tendons, etc. in relation to the intraspinal nerve roots.  *I feel that as a result of that fall, there was an exacerbation of his condition and a breakdown of this delicate balance, and I feel that there is more pressure being exerted on the nerve root from his now ruptured disk as compared to previously.*

(Emphasis added).

Dr. Stopak saw claimant again on November 16, 2010, and reviewed claimant's most recent diagnostic films.  Dr. Stopak determined claimant was a surgical candidate and referred him to his colleague, Dr. Nathan Nair.  After seeing claimant, Dr. Nair concurred with Dr. Stopak's findings and determined surgery should be scheduled "at his earliest possible convenience."  Accordingly, claimant scheduled surgery.

On December 21, 2010, in response to correspondence from claimant's counsel, Dr. Stopak concluded that claimant's current back problems are related to claimant's accident, which materially aggravated claimant's pre-existing condition, resulting in claimant being totally disabled from work.  Dr. Stopak also concluded that claimant required back surgery as a result of the August 18, 2010 workplace accident.

Upon employer's request, Dr. Ian Wattenmaker reviewed claimant's medical records and issued an opinion, on December 6, 2010.  Dr. Wattenmaker did not personally examine the claimant or review claimant's MRIs.  He opined that because claimant had a symptomatic disk herniation for which he was "being actively treated during the days prior to the event of August

18, 2010 [i]t is clear that a new significant injury did not take place." Employer also submitted correspondence from defense counsel to Dr. Fergus, upon which Dr. Fergus indicated in a series of checkmarks that he agreed with Dr. Wattenmaker and believed that claimant's current symptoms, disability, and need for surgery are related to claimant's pre-existing back condition.

Commission's Findings

In its unanimous opinion affirming the deputy commissioner's conclusion that claimant's required medical treatment and total disability were causally related to the August 18, 2010 workplace accident, the commission made several findings that are relevant to this appeal. The commission rejected employer's argument that Dr. Fergus's opinion should be given greater weight as the opinion rendered by claimant's treating physician. Instead, the commission found that Dr. Fergus no more acted as claimant's treating physician than Dr. Stopak. The commission also found that Dr. Stopak "recorded an accurate history of the claimant's back problems during his appointment with the claimant." The commission acknowledged that, unlike Dr. Stopak, Dr. Fergus evaluated claimant both before and after the August 18, 2010 workplace accident. However, the commission noted that, "despite the claimant's testimony that he informed Dr. Fergus of his accident, Dr. Fergus fail[ed] to note any details of the claimant's August 18, 2010 fall" in his medical notes. Furthermore, the commission found that Dr. Fergus did not explain the basis for his opinion, unlike Dr. Stopak. The commission also found that Dr. Wattenmaker's opinion should be given very little weight since he only reviewed claimant's medical records and did not actually examine claimant.

Weighing all the medical evidence, the commission concluded that "the evidence sufficiently proves that the claimant suffered a material aggravation of his pre-existing back condition as a result of his fall" on August 18, 2010 and that "the employer is responsible for this material aggravation of a pre-existing condition."

II. ANALYSIS

On appeal, this Court views the evidence in the light most favorable to the prevailing party below – in this case, claimant. R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). "By statutory mandate, 'an award of the Commission . . . shall be conclusive and binding as to all questions of fact.'" Georgia-Pacific Corp. v. Robinson, 32 Va. App. 1, 4, 526 S.E.2d 267, 268 (2000) (citing Code § 65.2-706(A)). It is well settled that "the 'question [of causation] raised by 'conflicting expert medical opinions' is one of fact.'" Id. at 5, 526 S.E.2d at 268 (quoting Eccon Constr. Co. v. Lucas, 221 Va. 786, 790, 273 S.E.2d 797, 799 (1981)). "The commission's determination of causation is a factual finding that will not be disturbed on appeal if supported by credible evidence." Commonwealth of Virginia/Central Virginia Training Center v. Cordle, 37 Va. App. 232, 238, 556 S.E.2d 64, 67 (2001). In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses. Jules Hairstylists, Inc. v. Galanes, 1 Va. App. 64, 69, 334 S.E.2d 592, 595 (1985).

Employer's five assignments of error all relate to the commission's decision to rely on the opinion of Dr. Stopak that the August 18, 2010 workplace accident aggravated claimant's pre-existing back condition. Based on Dr. Stopak's opinion, the commission found that the August 18, 2010 workplace accident caused a compensable injury under the Act. Employer contends that Dr. Stopak's opinion was not supported by credible evidence in the record.

Employer compares this case to Clinchfield Coal Co. v. Bowman, 229 Va. 252, 329 S.E.2d 15 (1985), but the decision in that case simply is not controlling or even persuasive on the very different circumstances in this case.[2] The Supreme Court's holding in Clinchfield Coal Co.

---

[2] In Clinchfield Coal Co., Bowman's treating physician initially opined that Bowman's knee problems were causually related to the 1978 industrial accident that was the subject of Bowman's claim of a compensable injury. The treating physician based this initial opinion

reflects the principle that, when one physician renders two conflicting opinions – the first opinion being an assumption made without the benefit of reviewing the claimant's medical history, and the second opinion occurring after the physician has reviewed the claimant's medical history – the first opinion is not entitled to any weight because it is "based upon a faulty premise," leaving the more informed opinion as the only remaining opinion that is "based upon the facts." Id. at 252, 329 S.E.2d at 16. The decision in Clinchield Coal Co. is inapplicable here because Dr. Stopak, whose opinion on the issue of causation was always consistent, rendered his opinion *after* reviewing claimant's medical history. Here, the commission found that "Dr. Stopak recorded an accurate history of the claimant's back problems" and "reviewed the claimant's multiple MRI scans" from before and after the accident. Credible evidence supports this finding. Specifically, Dr. Stopak's notes reflect claimant's original referral to Dr. Fergus, claimant's treatment with Dr. Poss, his previous medical procedures, the recurrence of claimant's back pain in the spring of 2010, and his treatment up until the date of the accident. Given Dr. Stopak's knowledge of claimant's medical history prior to rendering his opinion, employer's assertion that the commission here erred as a matter of law under Clinchfield Coal Co. when it assigned weight to Dr. Stopak's opinion is simply incorrect.

Furthermore, the Supreme Court's opinions explain more generally that it is the role of the commission – not the appellate court – to make credibility determinations and to weigh the

---

"solely on the medical history Bowman related" and considered it reasonable from the details Bowman provided "to medically assume" that the 1978 industrial accident caused Bowman's knee problems. Clinchfield Coal Co., 229 Va. at 250-51, 329 S.E.2d at 16. However, Bowman's treating physician changed his opinion after reviewing Bowman's medical records. The treating physician then "stated unequivocally" that the cause of Bowman's knee problems was an earlier 1975 injury that had required surgery. Id. at 252, 329 S.E.2d at 16. The Supreme Court held that the commission erred in giving any weight to the treating physician's initial opinion because this "assumption rested upon a faulty premise" – given the treating physician rendered the initial opinion before seeing Bowman's medical records, which revealed the treatment for Bowman's earlier 1975 injury. Id.

evidence. See, e.g., Celanese Fibers Co. v. Johnson, 229 Va. 117, 121, 326 S.E.2d 687, 690 (1985) ("We do not judge the credibility of witnesses or weigh the evidence on appeal."). In this light, we address employer's argument that Dr. Stopak's explanation of the claimant's medical history was incomplete and inaccurate. According to employer, the medical history does not support Dr. Stopak's assumption of a delicately balanced "homeostatic equilibrium" that was disrupted by the August 18, 2010 workplace accident. Employer relies on Dr. Fergus's belief that claimant's condition was "progressive" just prior to the accident. Employer emphasizes that Dr. Fergus also agreed with the opinion set forth by Dr. Wattenmaker in his report of December 6, 2010 that all medical treatment recommended for claimant was causally related to the pre-existing chronic lower back condition – and was not a result of the accident.

However, the commission, within its role as factfinder, is entitled to weigh medical evidence. Hungerford Mech. Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991). Thus, the commission was within its authority to give greater weight to the opinion of Dr. Stopak (and his colleague, Dr. Nair) that the August 18, 2010 workplace accident aggravated his pre-existing condition in a medically significant way. The decision to credit Dr. Stopak's opinion was not plainly wrong or unsupported by credible evidence in the record.

The commission explained that it relied on Dr. Stopak's opinion because he "described in detail the records and information he used to make his causation determination and specifically indicated that the claimant's compensable work injury exacerbated his disc herniation at the L5-S1 level, thus causing an increase in his symptoms." The commission found that Dr. Stopak's determination was entitled to greater weight than the other doctors at issue "in light of Dr. Stopak's unwavering and fully explained opinion."[3]

_____

[3] Contemporaneous medical records from Rebecca Snyder, the physician's assistant for Dr. Poss, further corroborate Dr. Stopak's opinion. Snyder noted that "new prob[lems] started" after the August 18, 2010 workplace accident and that claimant's pain "is more severe than previous."

The fact that the medical opinions procured by employer are at odds with Dr. Stopak's opinion does not render Dr. Stopak's opinion incredible. "If there is evidence, or reasonable inferences can be drawn from the evidence, to support the Commission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding." Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986); see also Perry v. Delisle, 46 Va. App. 57, 64, 615 S.E.2d 494, 495 (2005) (en banc). "The probative weight to be accorded [medical] evidence is for the Commission to decide; and if it is in conflict with other medical evidence, the Commission is free to adopt that view 'which is most consistent with reason and justice.'" Georgia-Pacific Corp., 32 Va. App. at 5, 526 S.E.2d at 269 (quoting C.D.S. Const. Services v. Petrock, 218 Va. 1064, 1070, 243 S.E.2d 236, 240 (1978)).

Employer contends that there is no assurance that Dr. Stopak's opinion was based on a reasonable medical certainty because Dr. Stopak simply answered "yes" to the "fill-in-the-blank" questionnaire sent by claimant's attorney.[4] However, the issue of whether Dr. Stopak's opinion was based on a reasonable medical certainty was not preserved for appeal. The commission's opinion does not address this issue, and employer did not file a motion for reconsideration seeking the commission to address it. Thus, there is no commission ruling on this issue for this Court to review. See Minor v. Aramark/VCU, 59 Va. App. 622, 633 n.1, 721 S.E.2d 818, 824 n.1 (2012); Hodnett v. Stanco Masonry, Inc., 58 Va. App. 244, 253, 708 S.E.2d 429, 434 (2011).

Employer argues that Dr. Fergus's opinion should have been accorded greater weight as the opinion of a treating physician. However, the commission did not find that Dr. Fergus was claimant's treating physician any more than Dr. Stopak was claimant's treating physician. The

---

[4] We note that Dr. Stopak wrote a lengthy report on November 9, 2010, in which he provided a thorough explanation for his opinion.

commission explained, "Given the limited nature of the treatment provided by both [Dr. Stopak and Dr. Fergus], we do not believe our policy of providing greater weight to the treating physician is applicable." The commission also noted that Dr. Fergus *did not make any notes regarding claimant's workplace accident* in his medical records when he treated claimant the one time following the August 18, 2010 workplace accident. The commission explained that Dr. Stopak gave a more detailed explanation for his opinion, noting that "Dr. Fergus merely responded affirmatively to the employer's counsel's questions eight months after he treated the claimant."

Moreover, the commission explained its reasoning for giving the opinion of Dr. Wattenmaker very little weight, stating, "Dr. Wattenmaker's opinion as a records reviewer deserves less weight than the other treating medical providers' opinions in this case." The commission was, thus, well within its authority to accept Dr. Stopak's opinion as that "'which is most consistent with reason and justice'" and to reject Dr. Fergus's opinion and Dr. Wattenmaker's opinion as less convincing. Georgia-Pacific Corp., 32 Va. App. at 5, 526 S.E.2d at 269 (quoting C.D.S. Const. Services, 218 Va. at 1070, 243 S.E.2d at 240).

Finally, employer argues that the August 18, 2010 workplace accident resulted in insufficient objective evidence of a sudden and obvious mechanical change in claimant's back. Under Virginia law, even an aggravation of a pre-existing condition requires a sudden and obvious mechanical change. Russell Loungewear v. Gray, 2 Va. App. 90, 95, 341 S.E.2d 824, 826 (1986) ("'When an injury sustained in an industrial accident accelerates or aggravates a preexisting condition, death or disability therefrom is compensable under the Workers' Compensation Act.'" (quoting Ohio Valley Construction Co. v. Jackson, 230 Va. 56, 58, 334 S.E.2d 554, 555 (1985))). To establish the mechanism or cause of the injury or incapacity, the commission relies on the medical evidence presented. Clinch Valley Med. Ctr. v. Hayes, 34

- 10 -

Va. App. 183, 192, 538 S.E.2d 369, 373 (2000) ("Causation is usually proven by medical evidence.").

Employer relies on the opinions of Dr. Wattenmaker and Dr. Fergus that the claimant did not suffer a material aggravation of his pre-existing injury and, therefore, did not suffer a compensable injury by accident. However, for the reasons explained above, the commission was within its authority – and credible evidence supported its decision – to accept Dr. Stopak's opinion (as opposed to those of other doctors) as that "'which is most consistent with reason and justice.'" Georgia-Pacific Corp., 32 Va. App. at 5, 526 S.E.2d at 269 (quoting C.D.S. Const. Services, 218 Va. at 1070, 243 S.E.2d at 240).

### III.  CONCLUSION

There is ample credible evidence supporting the commission's reliance on the medical opinion of Dr. Stopak, including that he evaluated the patient himself, compared both of claimant's MRIs (pre-accident and post-accident), kept thorough notes, and reviewed claimant's previous medical records. Accordingly, we affirm the commission's unanimous opinion that upheld the deputy commissioner's award of benefits.

<u>Affirmed.</u>