COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Benton and Overton
Argued at Salem, Virginia

BASSETT BURKEVILLE VENEER and
 LIBERTY MUTUAL FIRE INSURANCE COMPANY
                                         OPINION BY
v.  Record No. 2212-94-3        JUDGE JAMES W. BENTON, JR.
                                     JANUARY 30, 1996
RICHARD RAYMOND SLAUGHTER, JR.


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            James C. Joyce, Jr. (Monica L. Taylor;
            Gentry, Locke, Rakes & Moore, on briefs),
            for appellant.

            James B. Feinman (James B. Feinman &
            Associates, on brief), for appellee.


     Bassett Burkeville Veneer contends that the Workers'

Compensation Commission erred in finding (1) that Raymond Richard

Slaughter, Jr.'s work injury caused his psychological disorder

and (2) that Slaughter received treatment from authorized

physicians.  Finding no error, we affirm the commission.

                              I.

     The evidence proved that on October 24, 1988, Slaughter

suffered a cartilage tear in his chest while he was employed by

Bassett.  Slaughter immediately reported his injury to a

supervisor, who directed an employee to drive Slaughter to Dr.

Ralph Godsey's office.  Slaughter received a pain killer from Dr.

Godsey and returned to work within a day or two of his injury.

Slaughter testified that he was in pain every day and could not

perform any lifting.

     On April 7, 1989, Slaughter lost consciousness while driving

home from work.  He was taken to a hospital emergency room and then to Johnston-Willis Hospital where he stayed for nine days. While Slaughter was being treated for chest pain, his physician requested Dr. James A. Shield, Jr., a psychiatrist, to see Slaughter.  During his initial examination of Slaughter in April 1989, Dr. Shield found Slaughter to be "massively depressed" with a history of chest pain complaints, and he recommended psychiatric treatment.  Slaughter then was transferred to the psychiatric section at Chippenham Medical Center.  He remained in the psychiatric section of the hospital for fifty-six days and received treatment from Dr. Shield.  Since his release from the hospital's psychiatric section, Slaughter has been admitted to the hospital seven other times due to his psychiatric illness.

Dr. Shield diagnosed Slaughter as suffering from major depression and severe chest pain.  He described Slaughter as "totally controlled by his pain syndrome . . . [and] total[ly] dysfunctional."  In diagnosing Slaughter and investigating the cause of Slaughter's disorder, Dr. Shield learned of Slaughter's past medical problems.  Dr. Shield opined that Slaughter's 1988 work injury was a precipitating event of Slaughter's "decompensation" (defined by Dr. Shield as "just plain fall[ing] apart").  He believed Slaughter to be a hard-working, motivated individual until the pain from his injury caused his emotional collapse.  He described the injury as "the straw that broke the camel's back."  Dr. Shield testified that Slaughter "was in a

massive, massive emotional decompensation" that was caused by his depression over the pain that resulted from his work-related injury.

At the request of the employer, another psychiatrist, Dr. Robert S. Brown, Jr., interviewed Slaughter. He also reviewed Slaughter's medical, employment, and school records. Dr. Brown diagnosed Slaughter as suffering from somatoform pain disorder that began in the early 1980s. He reported that Slaughter's work-related injury was only incidental to his psychological problems and that Slaughter falsely attributed his depression and disorder to the work injury.

## II.

The deputy commissioner found that "[t]he experts' positions differ significantly only in that Dr. Shield opines that Slaughter's psychological disorder is causally related to his injury by accident on October 24, 1988; Dr. Brown opines that Slaughter's psychological disorder is not causally related to the same incident." Citing Dr. Brown's opinion that Slaughter falsely attributed his disorder to the work-related injury, the deputy commissioner ruled that Slaughter's psychological problems were not causally related to Slaughter's injury and denied any award for Slaughter's psychological problems. The deputy commissioner awarded Slaughter medical benefits only for treatment of the physical injury to his chest.

On review, the commission ruled that Dr. Shield was an

authorized treating physician.  Based on its analysis of the extensive psychological evidence, the commission found that Slaughter's work-related injury caused the psychological problems.  Citing Dr. Shield's four-year treatment of Slaughter and his extensive reports, the commission found that his opinions and diagnoses were more persuasive than those of Dr. Brown and therefore awarded Slaughter compensation for psychological injuries.

### III.

If a compensable work-related injury occurs and "no panel of physicians is offered to the employee, he or she is free to select his own physician."  Goodyear Tire & Rubber Co. v. Pierce, 9 Va. App. 120, 128, 384 S.E.2d 333, 337-38 (1989).  The uncontradicted evidence in the record establishes that Slaughter was not offered a panel of physicians.  Moreover, we agree with the commission's ruling that the effect of Bassett's denial that a compensable injury occurred required Slaughter to seek and pay for his own medical care.  Id. at 128, 384 S.E.2d at 338.  When Bassett denied liability, Slaughter "was entitled to choose his own physician."  Id. at 129, 384 S.E.2d at 338.  Therefore, the commission properly ruled that Dr. Wittkamp and Dr. Shield were authorized treating physicians.  See id. at 130, 384 S.E.2d at 339.

### IV.

The commission's findings of fact, when supported by

credible evidence, are binding on appeal.  Code § 65.2-706(A);

Fairfax Hosp. v. DeLaFleur, 221 Va. 406, 410, 270 S.E.2d 720, 722

(1980).  In awarding Slaughter compensation for psychological

injuries, the commission found "Dr. Shield's opinions to be

reasonable and consistent with the medical records."  The

commission also found that "Dr. Shield was intimately involved

with [Slaughter's] treatment since April of 1989," that Dr.

Shield consulted with numerous experts, and that Dr. Shield had

considered his patient's medical history.  When we examine the

evidence in the light most favorable to Slaughter, the prevailing

party below, Odom v. Red Lobster, 20 Va. App. 228, 233, 456

S.E.2d 140, 142 (1995), we conclude that the commission's

decision is supported by credible evidence.

As the deputy commissioner noted, "[b]oth Dr. Shield and Dr.

Brown testified eloquently and at length regarding Slaughter's

psychological disorders" and they only "differed in subtle ways

in their diagnoses."  Dr. Shield diagnosed Slaughter as having

psychogenic pain syndrome, major depression, and dysthymic

disorder.  Dr. Shield testified that he had "no objection" to Dr.

Brown's diagnosis that Slaughter had somatoform pain disorder.

He further testified

> Well, I never diagnosed him as having that,
> and it's not in my records, you won't find it
> anywhere there.  I have no disagreement with
> it because I was treating Mr. Slaughter for
> his depressive decompensation more than
> anything else, as a result of his pain
> syndrome.  And I wasn't necessarily sending
> anybody a bill for treatment of somatoform
> pain syndrome, I was sending a bill for

> treating the devastating depressions that I think were secondary to that. I think the somatoform pain disorder is a good description, and I think dysthymic disorder, he's got in his report, is a good description, I think he left out the major depressive episode diagnosis that precipitated his hospitalizations. And so I have no diagnostic arguments.

In addition, however, Dr. Shield's testified that although Slaughter had psychiatric problems before the 1988 injury, "the October [1988] accident caused his psychiatric decompensation . . . and the disability." Dr. Shield acknowledged that his opinion regarding causation differed from Dr. Brown's opinion.

The commission aptly acknowledged and applied the principle that "great weight should be given to the evidence of an attending physician." C.D.S. Constr. Servs. v. Petrock, 218 Va. 1064, 1071, 243 S.E.2d 236, 241 (1978). The commission made the following findings that are well supported by credible evidence:

> Although Dr. Brown worked over 100 hours developing his opinion in this case, Dr. Shield has been formulating his opinion on the basis of 4 years of personal treatment and with consultation of other medical experts. . . . We find Dr. Shield's opinions to be reasonable and consistent with the medical records, and they are more persuasive in this case. Although the employer argues that there were other stressors in [Slaughter's] life, the psychological and medical reports place overwhelming emphasis on the injury of October 1988 as the cause of [Slaughter's] depression. Dr. Brown's opinion that the injury at work was merely incidental to a disease which progressed on a natural path leading to his present disability is belied by the evidence that [Slaughter] was able to earn a livelihood and be a productive member of society despite his depression and psychosomatic symptoms until

- 6 -

> he began to unravel after the incident of
> October 24, 1988, following which he became
> virtually dysfunctional.

The commission's findings, based upon Dr. Shield's reports, support the commission's conclusion that Slaughter's psychological disability was a compensable consequence of his injury by accident.  See Ohio Valley Constr. Co. v. Jackson, 230 Va. 56, 58, 334 S.E.2d 554, 555 (1985); Seneca Falls Greenhouse & Nursery v. Layton, 9 Va. App. 482, 485–86, 389 S.E.2d 184, 186–87 (1990).

For these reasons, we affirm the commission's award.

Affirmed.