Jeffrey F. CUSACK, Plaintiff,

v.

John J. CALLAHAN, Ph.D., Acting
Commissioner of Social
Security, Defendant.

No. 97–4024–RDR.

United States District Court,
D. Kansas.

Jan. 30, 1998.

Roger D. Fincher, Bryan, Lykins & Hejtmanek, P.A., Topeka, KS, for Plaintiff.

D. Brad Bailey, Office of United States Attorney, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

ROGERS, Senior District Judge.

This is an action to review a final decision by the Commissioner of Social Security regarding plaintiff's entitlement to disability insurance benefits under the Social Security Act. The court has reviewed the briefs filed by the parties and is now prepared to rule.

On December 15, 1994, plaintiff filed an application for disability benefits under Title II. He alleged that his disability began on April 22, 1994. Plaintiff believed that he was disabled due to back pain and depression. Plaintiff's application was denied initially and on reconsideration by the Social Security Administration (SSA). At plaintiff's request, a hearing was held before an administrative law judge (ALJ) on February 5, 1996. On March 18, 1996, the ALJ determined in a written opinion that plaintiff was not entitled to disability benefits. On November 29, 1996, the Appeals Council of the SSA denied plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

This court reviews the Commissioner's decision to determine whether his factual findings were supported by substantial evidence in light of the entire record and to determine whether he applied the correct legal standards. *Hawkins v. Chater,* 113 F.3d 1162, 1164 (10th Cir.1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quotations omitted). We may "neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v.*

*Secretary of Health & Human Services,* 933 F.2d 799, 800 (10th Cir.1991).

The Commissioner has established a five-step sequential process to determine if a claimant is disabled. *Reyes v. Bowen,* 845 F.2d 242, 243 (10th Cir.1988); 20 C.F.R. § 404.1520. If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. *Sorenson v. Bowen,* 888 F.2d 706, 710 (10th Cir.1989). The burden of proof is on the claimant through step four; then it shifts to the Commissioner. *Id.*

Plaintiff was born on March 18, 1960. He completed the tenth grade in school. He later attended truck driving school. He has worked as a truck driver, insulation installer and office helper. He has not worked since April 22, 1994.

Plaintiff was initially examined on August 9, 1993 by Dr. Phillip S. Olsen, his employer's physician. Plaintiff complained of back pain. He indicated that three weeks earlier he had strained his back at his place of employment. Dr. Olsen's examination revealed pain in the plaintiff's low back region into his left leg. Dr. Olsen assessed low back sprain and prescribed Feldene. He encouraged plaintiff to submit an accident report to his employer.

On August 16, 1993, Dr. Olsen was informed that plaintiff had seen Dr. Mike McClintick for a high fever and sore throat with pus pockets. Dr. McClintick suggested that plaintiff had a reaction to the Feldene and advised him to stop taking it. Dr. Olsen felt there was no connection between the medication and plaintiff's condition.

On August 25, 1993, plaintiff reported significant improvement in his back. Dr. Olsen noted that "[h]e only took one Feldene and has been basically been (sic) getting better with time." Dr. Olsen observed that plaintiff was moving well and had no objective abnormalities. Dr. Olsen released plaintiff from care, to return only if new problems arose.

Plaintiff returned to Dr. Olsen on October 21, 1993, stating that he had reinjured his back a week earlier. Plaintiff reported pain in the same area of his lower back. He stated that he did not feel he had ever fully recovered from the first injury. The exami-

nation by Dr. Olsen revealed no changes. He found no radicular pain. The deep tendon reflexes were equal and brisk. He prescribed Ibuprofen and released plaintiff to light duty work.

Dr. Olsen continued to see plaintiff over the next few weeks. Plaintiff continued to complain of intense pain in his lower back. Dr. Olsen found no changes in plaintiff's physical examination. On October 29, 1993, Dr. Olsen provided plaintiff with a sample of Voltaren and told plaintiff he could remain on light duty work.

On November 5, 1993, plaintiff indicated to Dr. Olsen that he was seeing improvement. Plaintiff stated that the Voltaren had helped him. Dr. Olsen found that plaintiff continued to move well and to show improvement.

On November 8, 1993, Dr. Olsen evaluated plaintiff's condition as follows:

In summary this patient is suffering from low back strain. It is my estimation that there will be no permanent disability related to this problem; I fully expect that he will improve and recover. I have indicated that he should be doing light duty which involves no lifting, pulling or pushing such that he would have to do with his normal job as truck driver. At this time I do not know how long it will take for the patient to fully recover, my plan is to continue with the present therapeutic plan.

Dr. Olsen saw plaintiff again on November 10, 1993 and November 11, 1993. Plaintiff was complaining about numbness that extended down the anterior aspect of both legs. Plaintiff indicated that this pain arose while he was walking on a treadmill as part of physical therapy. Dr. Olsen found that the plaintiff's symptoms were "nonphysiologic." Pinprick determination demonstrated that plaintiff had numbness on the anterior aspects of both thighs and both lower extremities. Dr. Olsen opined that "this is not possible based on known neuroanatomy." Dr. Olsen stated:

I reviewed the patient's situation and re-evaluated the entire program that he is currently on and felt that in view of his relatively minor symptoms that he would be better served by focusing on the positive rather than the negative and I advised him on 11–10–93 that I felt that there

would be a significant advantage to him to return to work. I think that too much focus on his symptoms was perhaps causing him to lose perspective with regard to his symptom complex. The patient was therefore released to return to regular duty.

On December 23, 1993, upon the advice of his attorney, plaintiff saw Dr. Michael P. Estivo. Plaintiff reported discomfort in his low back and pain radiating into his left buttock and leg. X-rays of his lumbar and thoracic spine revealed no appreciable bony pathology other than spina bifida occulta at S1, which is a congenital anomaly and not associated with his work injury. Dr. Estivo discontinued Voltaren and started plaintiff on a new anti-inflammatory medication. Dr. Estivo advised plaintiff to stay off work and recommended a magnetic resonance imaging (MRI).

On January 6, 1994, Dr. Olsen informed plaintiff's employer's workers' compensation insurer that an MRI was not warranted. He again observed that he found no evidence of permanent injury arising from his work injury. He again stated that he thought plaintiff could be employed.

Plaintiff was referred to Dr. Daniel Zimmerman on April 26, 1994 for a workers' compensation rating. Plaintiff reported an initial back injury on August 10, 1993, and an additional injury on about October 20, 1993. He reported that he was able to sit approximately fifteen minutes, stand for fifteen minutes, and believed he was capable of walking one-half block. Plaintiff was taking Motrin four times a day and noted that sometimes he would use more. Physical examination demonstrated intraspinous tenderness from L4 through S1, but no spasm of the lumbar paraspinous musculature on either the right or left side. Sciatic notch testing was positive on the right side. Plaintiff had no trochanteric tenderness and no saddle numbness. An x-ray of his lumbar spine demonstrated normal vertebral alignment, no osteoarthritic change, and normal bony mineralization. The x-ray did reveal disc space narrowing of a marked degree at L5–S1, but other spaces appeared well-maintained. Dr. Zimmerman opined that plaintiff

"sustained permanent partial impairment of the body as a whole secondary to the injury sustained affecting his lumbosacral spine which should be rated at 12 percent." He further stated:

> Mr. Cusack is capable of lifting 50 pounds on an occasional basis, 25 pounds on a frequent basis. He should avoid activities where he would be required to frequently flex his lumbosacral spine and, hence, should avoid frequent bending, stooping, squatting, and crawling activities as such activities, repetitively performed or carried out over protracted periods of time, would be likely to aggravate low back pain and discomfort.

Dr. Zimmerman believed that plaintiff's condition was stable and that pain could be relieved with Motrin and heat therapy in the form of hot baths, hot showers and a heating pad.

On February 7, 1995, plaintiff saw Dr. Edward Lee at the request of the Kansas Disability Determination Service. Plaintiff complained of chest pains, stomach discomfort, and back and leg pain. Plaintiff related a history of chest pains and high blood pressure dating back four years. He indicated that he had suffered low back pain, numbness in his left arm and both legs for two years. Plaintiff stated that he needed a cane and a wheelchair to get around. He noted he has only the ability to sit, stand or walk for ten minutes at a time and to do each for only one hour a day. He noted he occasionally lifts five pounds. He indicated that bending, stooping and twisting was uncomfortable. Dr. Lee noted plaintiff's cooperation during the examination as "less than maximum." Plaintiff refused to get out of the wheelchair or undress to put a gown on for the evaluation. During his examination, Dr. Lee found that plaintiff suffered pain in his left shoulder and arm, both legs and in the lumbar spine. Dr. Lee made the following orthopedic observations with "less than maximum cooperation" from the plaintiff: (1) had severe difficulty getting on and off examining table; (2) had severe difficulty with heel and toe walking; (3) had severe difficulty squatting and arising from sitting position; and (4) severe difficulty hopping. Dr. Lee diagnosed hypertension with atypical chest pains and arthralgias. He again noted that cooperation was difficult and that plaintiff showed "give away weakness" and sluggish reflexes, but no atrophy. Lumbar spine x-rays showed the normal lumbar lordosis somewhat straightened. They further showed no abnormalities affecting the posterior elements or sacroilliac joints, no end plate spurring or eburnation, and disc spaces were adequately maintained.

At the hearing before the ALJ, plaintiff testified he had last worked on April 22, 1994. He indicated he injured his back twice while working as a truck driver in 1993. After the second injury, he worked in the office alphabetizing paperwork. He was eventually fired because he could not follow company policies. He suggested that he was unable to concentrate on his work.

Plaintiff indicated he was using a cane at the hearing. He further stated that he also uses a wheelchair, but that no doctor had prescribed the cane or the wheelchair. Plaintiff testified he had stiffness and sharp pain in his mid to lower back all of the time. He also stated that he has pain running down the sides of his legs to his toes. He takes Tylenol, Advil and aspirin for the pain. He indicated that he has chest pains about three times a week, but that he had not seen a doctor for this problem.

Plaintiff stated that he can stand for five to ten minutes, sit for thirty minutes, and walk for half a block before he has to catch his breath. He smokes a half pack of cigarettes a day or less. He stated that he has a strength problem in his arms and stiffness in his fingers, but he has not seen any doctor for this condition. He indicated that he can lift ten pounds with his right arm and five pounds with his left arm. He testified that he has weakness in his back and legs and has difficulty standing up. He noted that his ability to speak, see and hear is fine. He did state, however, that he has trouble with his memory and with concentration.

Plaintiff testified that he does little each day, just "mainly exist." He stated he walks around the block a couple of times a day. The rest of the day he sits, lies down or takes naps. He does spend some time on the telephone talking with friends, and occasionally he goes out for coffee with friends.

Marianne Catherine Lumpe, a vocational expert, testified in response to a hypothetical question which assumed plaintiff's age, education and work experience. The hypothetical also assumed the residual functional capacity to perform light work with only simple repetitive tasks. Ms. Lumpe opined that plaintiff could perform his past relevant work as an office helper. She noted that simple repetitive tasks would require a low amount of concentration. She further testified that if the hypothetical was amended to include a sit/stand option, then the jobs of electronic wire assembler, optical goods assembler, cashier II, and ticket seller could be added to the list of jobs plaintiff could perform.

The ALJ determined that plaintiff did not suffer from a listed impairment, but that he did suffer from a low back strain and hypertension. The ALJ found that plaintiff's complaints of disabling pain were not credible in light of his medical history and the reports of his treating physicians. She noted that no doctor had prescribed the use of a cane or wheelchair and that no doctor had prescribed any pain medication. She further noted that the objective medical evidence failed to support plaintiff's subjective complaints. She determined that plaintiff retained the residual functional capacity for a range of light work that involved simple repetitive tasks. She further found that plaintiff had not met his burden of proving that he was incapable of performing his past relevant work as an office worker. Accordingly, the ALJ decided this case at step four and concluded that plaintiff was not disabled.

█ Plaintiff contends that the ALJ improperly relied upon the opinion of Dr. Olsen in concluding that he was not disabled. Plaintiff suggests that the ALJ failed to give any weight to the doctors that he saw after he was released by Dr. Olsen, including Dr. Zimmerman. Plaintiff also argues that the ALJ improperly evaluated the examination of Dr. Lee. Finally, plaintiff asserts that the hypothetical question posed to the vocational expert by the ALJ failed to include all of his impairments.

Having carefully reviewed the record, the court finds that there is substantial evidence to support the ALJ's determination. Plaintiff has suggested that the ALJ placed too much reliance upon the opinion of Dr. Olsen.

He contends that Dr. Olsen should not have been considered a treating physician because he was his employer's doctor. The court must disagree with the arguments raised by the plaintiff concerning the ALJ's reliance upon Dr. Olsen's findings and conclusions.

A "treating physician" is a doctor "who has or has had an ongoing relationship" with the plaintiff. 20 C.F.R. § 404.1502. A plaintiff has an ongoing relationship with the doctor if the doctor has seen the plaintiff "with a frequency consistent with accepted medical practice for the type of treatment and evaluation required [by the plaintiff's] medical condition(s)." Id. The record discloses that Dr. Olsen saw plaintiff on a number of occasions. He conducted thorough physical examinations and followed plaintiff's condition and complaints over a period of three months. Accordingly, the ALJ's conclusion that Dr. Olsen was a treating physician is supported by substantial evidence in the record.

█ In reaching this conclusion we recognize, however, that the ALJ could have considered Dr. Olsen's relationship with plaintiff's employer in evaluating Dr. Olsen's conclusions. The ALJ is generally required to give substantial weight to the treating physician's opinion. Reid v. Chater, 71 F.3d 372, 374 (10th Cir.1995). A treating physician's opinion, however, is not binding on the ALJ or dispositive of the issue of disability. The ALJ may reject the opinion of a treating physician when good reasons are identified for not accepting them. Goatcher v. United States Dep't of Health & Human Services, 52 F.3d 288, 289–90 (10th Cir.1995). When the opinion of the treating physician is inconsistent with the other medical evidence, the ALJ should examine the reports of the other physicians to ascertain whether they outweigh the report of the treating physician. Id. at 290. Under the circumstances in this case, the court finds that the ALJ did not err in placing considerable significance on the findings and conclusions of Dr. Olsen. Dr. Olsen saw plaintiff on a number of occasions while the other doctors who examined plaintiff saw him only once. In addition, the findings of the other doctors are generally

consistent with the opinions rendered by Dr. Olsen.

Contrary to the argument of the plaintiff, the ALJ did evaluate Dr. Olsen's findings and conclusions in light of the examinations and opinions of the other doctors that saw plaintiff. The ALJ specifically referred to the reports of the other doctors that examined plaintiff. The ALJ noted that Dr. Zimmerman concluded that plaintiff had the ability to occasionally lift fifty pounds and to frequently lift twenty-five pounds. She further stated that Dr. Zimmerman only imposed restrictions on plaintiff of no frequent bending, stooping, squatting or crawling, which are consistent with a residual functional capacity of light work. She also discussed Dr. Lee's report, but noted that Dr. Lee found that plaintiff had given less than maximum cooperation with the orthopedic maneuvers. The ALJ also noted that Dr. Lee found no objective evidence in the x-rays of any abnormality. It is significant that no physician who examined plaintiff opined that he was disabled and unable to perform any type of work. In sum, the court is persuaded that the ALJ properly analyzed the medical evidence and reached a decision supported by substantial evidence.

The court also finds that the ALJ properly evaluated the plaintiff's credibility. The ALJ determined that plaintiff's subjective complaints as to the severity of his impairments were "greatly exaggerated." The ALJ reached this determination based on (1) the lack of objective evidence supporting plaintiff's complaints; (2) the conclusions reached by Dr. Olsen; and (3) the fact that no doctor had prescribed the use of a cane, a wheelchair or prescriptive pain medication. The determination of credibility is left to the observations made by the ALJ as the trier of fact. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995). Great deference should be given to the ALJ's conclusion as to credibility. *Campbell v. Bowen*, 822 F.2d 1518, 1522 (10th Cir.1987). The court finds that the ALJ's decision concerning the plaintiff's credibility is supported by substantial evidence.

The court finds it unnecessary to address plaintiff's argument regarding the ALJ's hypotheticals to the vocational expert. Since this case was decided at step four, improper questions to the vocational expert do not provide a basis for reversal. *See Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir.1994) (ALJ is not required to obtain testimony of vocational expert in a step-four proceeding). Even if we were to consider it, we would find that it lacks merit.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner be hereby affirmed.

**IT IS SO ORDERED.**