COURT OF APPEALS OF VIRGINIA

Present: Judges Bumgardner, Humphreys and Agee
Argued at Salem, Virginia


ISLAND CREEK COAL COMPANY

                                    MEMORANDUM OPINION* BY
v.    Record No. 1920-00-3       JUDGE ROBERT J. HUMPHREYS
                                        MARCH 20, 2001
JAMES E. ADKINS


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Lisa Frisina Clement (Michael F. Blair; Penn,
          Stuart & Eskridge, P.C., on brief), for
          appellant.

          D. Edward Wise, Jr. (Arrington, Schelin &
          Herrell, P.C., on brief), for appellee.


     Island Creek Coal Company appeals a decision of the

Virginia Workers' Compensation Commission denying its

application to terminate temporary total disability benefits

paid to James E. Adkins.  Island Creek argues that the

commission erred in determining that it had failed to sustain

its burden of proof to support the application for termination

of benefits.

     "Following established principles, we review the evidence

in the light most favorable to the prevailing party."  R.G.

Moore Building Corp. v. Mullins, 10 Va. App. 211, 212, 390

S.E.2d 788, 788 (1990).  If credible evidence supports the

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

commission's factual finding, we are required to uphold that finding on review. See Classic Floors, Inc. v. Guy, 9 Va. App. 90, 95, 383 S.E.2d 761, 764 (1989).

So viewed, the evidence presented at the hearing established that Adkins, who had been an Island Creek employee for approximately 22 years, sustained an injury to his ankle which arose out of and in the course of his employment on October 7, 1997. At that time, Adkins was employed as a motorman in the VP #3 mine.

Adkins was taken to Buchanan General Hospital immediately after he sustained the injury, where he was diagnosed with a fracture of his right fibula and placed in an ankle brace. On October 9, 1997, Adkins was sent to Dr. Thomas Kramer, an orthopedist. Dr. Kramer placed Adkins' injured leg in a short leg fiberglass cast and advised Adkins "it [was] probably going to be somewhere in the neighborhood of eight to twelve weeks before [Adkins] . . . [would] be able to return to his usual and customary occupation or longer . . . ."

Shortly thereafter, Island Creek accepted Adkins' claim as compensable, and the parties executed a memorandum of agreement. The commission entered an award on January 22, 1998, granting Adkins temporary total disability benefits beginning October 8, 1997.

For the next several months, Adkins continued to receive treatment for his injury, but did not progress as expected. On

- 2 -

August 23, 1999, Dr. William McIlwain, one of Adkins' treating physicians, reported that Adkins had reached maximum medical improvement and was capable of light to moderate duty work, but should avoid prolonged squatting, as well as stairs and climbing.  He gave Adkins an impairment rating of 15% to his right leg and 21% to his right foot.

Dr. McIlwain examined Adkins again on September 15, 1999, and reported that "Adkins [had] an excellent exam.  He . . . complain[ed] of tenderness subjectively but his wound [had] healed very nicely."  Dr. McIlwain then advised Adkins that he had "objectively" recovered "to his pre-injury state" and that if his job were available, he had recovered to the point that he could return to work.[1]

Based on Dr. McIlwain's September 15, 1999 report, Island Creek filed an application to suspend benefits, alleging that Adkins' physician had released him to return to his pre-injury work.  During a pre-hearing deposition, Adkins denied that Dr. McIlwain had released him to return to work and indicated that because of his heart and leg, he would be unable to return to his pre-injury work.[2]  Adkins described his duties as a

---

[1] Apparently, the VP #3 mine had shut down by that time, and Adkins had been laid off.

[2] In April of 1998, Adkins suffered from a myocardial infarction and has since been treating with a cardiologist. However, other than its apparent effect in slowing Adkins' recovery, his heart condition is not an issue on appeal.

motorman as requiring him to load and unload supply trucks which came into various areas of the mines. To do this, Adkins was required to perform "quite a bit" of walking "up and down," to walk "stooped over" in some places, to bend, to lift "all sorts of things" such as steel, crib blocks, cement, mortar mix and other supplies, and to operate "scoops" by foot controls.

Shortly after the deposition, Adkins underwent an independent medical examination, at the request of Island Creek, which was performed by Dr. William E. Kennedy. Dr. Kennedy stated that there was a "very good correlation" between his objective findings with respect to Adkins' ankle and his complaints of continued ankle pain, weakness and loss of motion. He gave Adkins a permanent partial impairment rating of his right lower leg of 11%, and advised Adkins to avoid excessive stair climbing, ladder climbing, kneeling, squatting, crawling, or working over rough terrain, or slippery or sloping surfaces, in his future activities of daily living and employment.

Subsequently, Island Creek sent a job description for the position of motorman and Adkins' deposition transcript to Dr. McIlwain, and asked him to provide an opinion as to whether Adkins could perform the duties described. Dr. McIlwain responded by letter on December 7, 1999, stating in relevant part:

> I have reviewed the deposition of Mr. James
> Adkins . . . regarding his job description.
> I have also reviewed the job description

> that was sent to me by the employer via
> Employers Service Corporation.
>
> *       *       *       *       *       *       *
>
> I have compared that testimony to the job
> description sent to me by Employers Service
> and my evaluation of September 15, 1999
> which demonstrates the patient had an
> excellent examination.
>
> *       *       *       *       *       *       *
>
> It is still my contention and my opinion
> that Mr. Adkins can, in fact, do the job
> description that I have been supplied.

The actual job description provided to Dr. McIlwain was never submitted to the commission and is not part of the record on appeal.

During the hearing, Adkins again denied that McIlwain had released him to return to work and maintained that he could not perform his pre-injury job due to his ankle problems. Specifically, he testified that he could not climb stairs, as required about every 90 days, bend, squat and kneel, which was required "quite a bit," and could not walk on the "up and down, rough" surfaces of the mine, which were often slippery and sloped. A former Assistant Mine Superintendent confirmed that Adkins' description of the job was relatively accurate and confirmed that kneeling and squatting were required, although infrequently, and that the floor surface of the mine was uneven, wet, and slippery in places.

Based on this evidence, Deputy Commissioner Stevick granted Island Creek's application. However, on review of the deputy commissioner's decision, the full commission reversed, finding that Island Creek had failed to meet its burden in support of the application. The full commission noted that there was no evidence of a change in Adkins' physical condition between the August 23, 1999 report prepared by Dr. McIlwain and the September 15, 1999 report, and gave greater weight to the August 23 report, concluding that Dr. McIlwain's findings in the August 23 report were similar to the findings made by Dr. Kennedy. Accordingly, the commission held that Island Creek had failed to meet its burden in establishing that Adkins could kneel, crawl, squat, lift, and walk on the uneven surfaces as the job required.

The commission gave little weight to Dr. McIlwain's letter concerning the job description stating:

> [W]hile recognizing that Dr. McIlwain is [Adkins'] treating physician, we do not accord great weight to his opinion on this issue. In his report of December 1999, he expressly stated, after reviewing both [Adkins'] deposition and the job description provided by the employer, that [Adkins] could perform the duties reflected in the job description he was provided. He offered no opinion as to whether [Adkins] was capable of performing his pre-injury job duties as reflected in his deposition testimony.

On appeal, Island Creek contends that the commission erred in giving greater weight to the medical opinion of Dr. Kennedy,

because Dr. McIlwain was Adkins' treating physician.  Island Creek also argues that the commission erred in disregarding the letter from Dr. McIlwain concerning the employer's job description and Adkins' deposition testimony.

"General principles of workman's compensation law provide that in an application for review of an award on the ground of change in condition, the burden is on the party alleging such condition to prove his allegation by a preponderance of the evidence."  Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 464, 359 S.E.2d 98, 101 (1987) (citation omitted).  Thus, it was the burden of Island Creek to prove, by a preponderance of the evidence, that Adkins was "able to carry out all of the duties of his pre-injury employment . . . ."  Crystal Oil Co. v. Dotson, 12 Va. App. 1014, 1021, 408 S.E.2d 252, 256 (1991) (emphasis added).  "The commission has held that, in determining whether an injured employee can return to his or her pre-injury employment duties the commission does not look at how the duties could ideally be performed, but rather, how the duties were actually performed."  Clinchfield Coal Co. v. Parrott, 22 Va. App. 443, 446-47, 470 S.E.2d 597, 598-99 (1996) (citation omitted) (emphasis in original).

To meet this burden, Island Creek presented Dr. McIlwain's September 15, 1999 examination report, as well as his December 1999 opinion letter, stating that Adkins was capable of returning to his pre-injury work.  Conversely, Adkins relied

upon his deposition testimony describing the nature of his duties, as well as Dr. Kennedy's opinion of November 15, 1999, concluding that Adkins could not perform all of the duties required by his pre-injury position.

"Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing." Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 214 (1991).  In its role as fact finder, "[t]he probative weight to be accorded [medical] evidence is for the Commission to decide," and if a portion of the medical evidence "is in conflict with other medical evidence, the Commission is free to adopt that view which is most consistent with reason and justice." Georgia-Pacific Corp. v. Robinson, 32 Va. App. 1, 5, 526 S.E.2d 267, 269 (2000) (citation omitted).  Nevertheless, "great weight should be given to the evidence of an attending physician." Bassett Burkeville Veneer v. Slaughter, 21 Va. App. 575, 580, 466 S.E.2d 127, 129 (1996) (citing C.D.S. Constr. Servs. v. Petrock, 218 Va. 1064, 1071, 243 S.E.2d 236, 241 (1978)).

In reversing the decision of the deputy commissioner, the full commission relied heavily upon the opinion of Dr. Kennedy and refused to lend "great weight" to the opinion of Dr. McIlwain, based on its conclusion that Dr. McIlwain failed to consider the job duties described by Adkins in his deposition, in conjunction with those set forth in the job

description provided to him by the employer.  However, the commission was incorrect in concluding that Dr. McIlwain failed to consider Adkins' deposition testimony.  In fact, Dr. McIlwain clearly stated that he considered both the job duties set forth in the deposition testimony, as well as the duties described in the job description.

Thus, the commission failed to articulate credible reasons for giving little probative weight to the opinions of Dr. McIlwain.  Furthermore, based on this record, we cannot determine whether, without this factual error, the commission would have relied as heavily upon Dr. Kennedy's testimony versus that of Dr. McIlwain, Adkins' treating physician.

Accordingly, we reverse the decision of the commission and remand the matter with direction to the commission to reconsider the merits, while lending the appropriate probative weight to Dr. McIlwain's opinion of December 7, 1999.

<u>Reversed and remanded</u>.