COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Annunziata and Humphreys
Argued at Alexandria, Virginia


YELLOW FREIGHT SYSTEMS, INC.
                                              OPINION BY
v.   Record No. 0870-01-4      CHIEF JUDGE JOHANNA L. FITZPATRICK
                                          FEBRUARY 5, 2002
SHARON ROBINSON


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            S. Vernon Priddy III (P. Dawn Bishop; Sands
            Anderson Marks & Miller, on brief), for
            appellant.

            Peter J. Jones for appellee.


        Yellow Freight Systems, Inc. (employer) contends the

Workers' Compensation Commission (commission) erred in awarding

temporary total disability benefits to Sharon Robinson

(claimant).  Specifically, employer argues the commission

improperly applied the doctrine of compensable consequences to a

pre-existing mental or emotional condition or illness.  Employer

also contends the commission erred in finding a causal

connection between claimant's compensable workers' compensation

injury and the aggravation of her pre-existing mental or

emotional condition or illness.  Finding no error, we affirm.

                        I.  FACTS

        We view the evidence in the light most favorable to the

party prevailing below.  See Westmoreland Coal v. Russell, 31

Va. App. 16, 20, 520 S.E.2d 839, 841 (1999).  The commission's factual findings will be upheld on appeal if supported by credible evidence.  See James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).  "The fact that there is contrary evidence in the record is of no consequence." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

So viewed, on April 7, 2000, claimant was employed as a freight clerk for employer.  She fell and dislocated her right ulna, fractured her right radius and hurt her right breast, both knees and right ankle.  The parties stipulated the injury was compensable.  Claimant first treated with Dr. Anthony Debs who gave her light work restrictions, but she became dissatisfied with his treatment because he refused to "take her out of work." She then sought treatment with Dr. Kostas J. Constantine who also returned her to work with restrictions, but would not remove her from work.  Claimant's supervisor, Joe Lewis, offered to put her "on call" as a light duty job; however, this job required handwriting and she could not write with her left hand. When asked if she was forced to work beyond her restrictions, claimant testified,

> [t]hey didn't tell me I had to do this, but
> [Joe] kept saying how are the entries
> looking, can you work on them tomorrow.  It
> was like I could not work fast enough to
> please Joe. . . . On my very last day, the
> night that I called my psychiatrist, Joe
> says, well can't you type, can't you answer

-

> the phone? . . . It's like you're not doing
> enough, and he kept -- all -- when I was
> working, he said the entries, the entries
> have got to be done, got to do the entries,
> did you get, did you get a chance to work on
> the entries today.  No, Joe, I didn't have
> time, I was doing other things.

In April 2000, shortly after the accident, claimant saw her psychiatrist, Dr. Carl V. Hunt.  Claimant had been seeing Dr. Hunt "on and off" for two years prior to the injury.  Claimant acknowledged that she suffered from depression prior to the injury and that she was on medication prescribed by Dr. Hunt at the time of the accident.  However, she testified the injury and her efforts to continue in her regular position increased her stress.  She could not sleep and was irritable.  She felt depressed because she was unable to work in the same manner as before the accident and she was in constant pain.  "I couldn't believe all this was happening and there was nothing nobody [sic] could do for me."  On May 9, 2000, Dr. Hunt took claimant out of work.  He stated:

> Because of her recent injury, her physical
> ability to carry out her work
> responsibilities has been significantly
> impaired.  This is causing her excessive
> stress and is resulting in a disturbance of
> sleep and increasing irritability.  I do not
> believe she is mentally able to function at
> work at this time.

Her ongoing treatment with Dr. Hunt was conducted through weekly telephone calls.  Employer presented no medical evidence to contradict this opinion.

-

Claimant's supervisor, Joe Lewis, testified that he was aware of her restrictions. He stated the job he offered her could be done using one hand and that speed was not a factor.

The deputy commissioner found that while claimant suffered from pre-existing depression and had treated with Dr. Hunt prior to the injury, the compensable accident at work aggravated her underlying condition and caused her inability to work. The commission agreed with this finding, citing the letters and reports of Dr. Hunt that directly related claimant's post-injury mental status with her increased stress and anxiety caused by the compensable injury. The commission stated:

> The psychological impact of the claimant's injury has been significant, as evidenced by her severe levels of depression and irritability. Although she had been treated for these conditions before her work accident, her symptoms became more severe and disabling following her injury.
>
> The employer correctly points out that before the accident, the claimant was seeing Dr. Hunt and taking anti-depressant medication and that Dr. Hunt disabled the claimant without examining her. However, the employer has not presented any contrary medical evidence. Thus, Dr. Hunt's medical opinion that the claimant can not work because of the injury is uncontradicted.
>
> Based on this evidence, the claimant has proven a causal connection between her need for psychiatric treatment and the accident. Although she may have suffered preexisting psychiatric problems, the record establishes that her condition deteriorated after the accident and that her psychiatrist linked this condition to the accident.

-

II.  PSYCHOLOGICAL CONDITIONS AS COMPENSABLE CONSEQUENCES

Employer first contends the commission erred in finding that an employer is responsible for the effects of an accident, if it aggravates a pre-existing or underlying psychological condition.  Employer argues that it is responsible only for emotional or mental conditions caused by physical injury and not for those conditions aggravated by the physical injury.  We disagree.

The law is clear that "[w]hen an injury sustained in an industrial accident accelerates or aggravates a pre-existing condition . . . disability resulting therefrom is compensable under the Workers' Compensation Act."  Kemp v. Tidewater Kiewit, 7 Va. App. 360, 363, 373 S.E.2d 725, 726 (1988) (citing Ohio Valley Construction Co. v. Jackson, 230 Va. 56, 58, 334 S.E.2d 554, 555 (1985)), see also Goodyear Tire & Rubber Co. v. Harris, 35 Va. App. 162, 170-71, 543 S.E.2d 619, 623 (2001).

In Bassett Burkeville Veneer v. Slaughter, 21 Va. App. 575, 466 S.E.2d 127 (1996), we affirmed the commission's award of benefits on facts remarkably similar to those of the instant case.  On several occasions, Slaughter had been admitted to the psychiatric ward of a hospital for treatment of depression prior to his suffering a compensable injury by accident.  He returned to work, but was in constant pain and eventually was admitted to the hospital after passing out.  A psychiatrist evaluated him while he was hospitalized and diagnosed him as suffering a major

-

depressive episode as a result of the physical injury at work. The psychiatrist called the physical injury "the straw that broke the camel's back." Id. at 577, 466 S.E.2d at 128. "[The psychiatrist] testified that although Slaughter had psychiatric problems before the 1988 injury, the October [1988] accident caused his psychiatric decompensation . . . and the disability." Id. at 580, 466 S.E.2d at 129. Thus, we implicitly recognized the compensability of an aggravation of an underlying mental condition.

In Seneca Falls Greenhouse and Nursery v. Layton, 9 Va. App. 482, 389 S.E.2d 184 (1990), Layton also suffered from a pre-existing mental condition - a panic disorder. While at work, he attempted to open a can of pesticide and sprayed himself in the face and eyes. After the pesticide exposure, he suffered from headaches and double vision. We affirmed the award of benefits when it was determined that the pesticide exposure caused Layton to experience panic attacks that caused headaches and double vision. "Emotional harm following physical injury is compensable, even when the physical injury does not directly cause the emotional consequence." Id. at 486, 389 S.E.2d at 187.

In the instant case, claimant admitted she suffered from depression and had treated with Dr. Hunt for two years prior to her work-related injury. During that two-year period she was working without problems. Claimant attempted to return to her

-

pre-injury job soon after her injury and had difficulty performing her duties. She became irritable, could not sleep and felt overwhelmed by the injury and her inability to do her job. Relying on the medical testimony of Dr. Hunt as well as the claimant's testimony, the commission found, "[t]he psychological impact of the claimant's injury has been significant, as evidenced by her severe levels of depression and irritability. Although she had been treated for these conditions before her work accident, her symptoms became more severe and disabling following her injury." Credible evidence supports this finding and, thus, the commission did not err in determining that claimant's pre-existing emotional or mental condition was aggravated by the April 7, 2000 compensable accident.

### III. SUFFICIENCY OF THE EVIDENCE

Employer next argues that even accepting a compensable psychological consequence, the evidence is insufficient to prove a direct causal relationship between the injury and the aggravation of claimant's pre-existing mental or emotional condition.

"'"Decisions of the commission as to questions of fact if supported by credible evidence, are conclusive and binding on this Court."'" Allen & Rocks Inc. v. Briggs, 28 Va. App. 662, 673, 508 S.E.2d 335, 340 (1998) (quoting WLR Foods v. Cardosa, 26 Va. App. 220, 230, 494 S.E.2d 147, 152 (1997) (quoting

-

<u>Manassas Ice & Fuel Co. v. Farrar</u>, 13 Va. App. 227, 229, 409

S.E.2d 824, 826 (1991))).

Employer contends that claimant's interaction with her

supervisor and the tension in that relationship were the

precipitating factors in her deteriorating mental condition

rather than the physical injuries she sustained in the fall.  It

is well settled that "purely psychological disability resulting

from disagreements over managerial decisions and conflicts with

supervisory personnel that cause stressful consequences

ordinarily are not compensable."  <u>Teasley v. Montgomery Ward &</u>

<u>Co.</u>, 14 Va. App. 45, 49, 415 S.E.2d 596, 598 (1992).  However,

we do not reweigh the commission's factual determination.  The

commission was not required to accept the employer's theory that

her relationship with her supervisor was the cause of her

anxiety.

Claimant described the effect that her injuries - the

constant swelling and loss of feeling in her hand - had on her

mental status.

> It's like it was more stress, and I'm like,
> oh my God, what is going to happen to my
> hand, what is going to happen to my hand.
> And I couldn't sleep.  I was worried about
> my job.  I was worried about my hand.  I was
> worried about my knees.

This testimony, and the opinion of Dr. Hunt that the workplace

injury was the cause of her deteriorating mental condition,

support the commission's finding that claimant's injury, and her

-

inability to perform her work as she had prior to the accident, were the causes of her stress and anxiety rather than tension between herself and her supervisor.

Lastly, employer argues that claimant failed to show any continuing disability because the evidence proved she was able to perform some household chores.  This argument is without merit.  No evidence established that the ability to perform household chores equated to the ability to perform claimant's job.

For the foregoing reasons, we affirm the decision of the commission.

<u>Affirmed.</u>

-