COURT OF APPEALS OF VIRGINIA


Present:  Judges Humphreys, McClanahan and Petty
Argued at Salem, Virginia


ITT INDUSTRIES, INC. AND
  ACE AMERICAN INSURANCE COMPANY
                                                    MEMORANDUM OPINION* BY
v.      Record No. 1297-06-3            JUDGE ELIZABETH A. McCLANAHAN
                                                          MARCH 20, 2007
YVONNE E. TAYLOR


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Dale W. Webb (Frankl Miller & Webb, on brief), for appellants.

            Richard M. Thomas (Ferris, Eakin & Thomas, on brief), for
            appellee.


        ITT Industries, Inc. and its insurer (collectively "ITT") appeal the Workers'

Compensation Commission's finding that Yvonne E. Taylor suffered a psychological disability

as a compensable consequence of a work-related injury. ITT contends the commission, in

making that finding, erred: (1) by relying on the opinions of Taylor's psychiatrist and

psychologist as "treating physicians" in deciding the issue of causation; and (2) by giving any

weight to the opinion of Taylor's psychologist because she was not a medical doctor. For the

reasons that follow, we affirm the decision of the commission.

                                    I. BACKGROUND

        We summarize the relevant facts and all reasonable inferences deducible therefrom in the

light most favorable to Taylor, the prevailing party before the commission. See Tuck v.

Goodyear Tire & Rubber Co., 47 Va. App. 276, 279, 623 S.E.2d 433, 434 (2005). Taylor, an

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

employee of ITT for over 18 years, sustained a compensable work-related injury on August 9, 2004, when a chair in which she was sitting broke, causing her to fall to the floor. Taylor was eventually diagnosed as having fractured her pelvis as a result of the fall. She suffered, among other things, low back pain and spasms. Dr. Louis J. Castern, an occupational medical physician, initially treated Taylor for the injury. Dr. Castern subsequently referred Taylor to Dr. Murray E. Joiner, Jr., a physiatrist, for further evaluation and treatment of her back pain.[1] Because of her pelvic injury, Taylor was released from work from August 10 through September 7, 2004, and was then returned to work at partial capacity from September 8 through October 11, 2004, as Drs. Castern and Joiner directed.

From October 12, 2004 through February 8, 2005, Taylor was again off work, this time at the direction of her psychiatrist, Dr. George Luedke, due to her incapacity from severe depression. Relative to this period of Taylor's psychological disability, Dr. Luedke explained in a May 2005 report that he had treated her for depression on a monthly to quarterly basis since 1995. In 2003, she was in "partial remission." Less than a month before the subject accident, in July 2004, she was "perfectly stable." Following the August 9, 2004 accident, however, Taylor became severely depressed. Dr. Luedke opined that her injury from the accident "aggravat[ed] . . . her depression." More specifically, Dr. Luedke stated that in his "medical and psychiatric

---

[1] Chosen from "the employer's panel," Dr. Castern was Taylor's initial "authorized treating physician." See Code § 65.2-603. Dr. Joiner was also an authorized treating physician, as found by the commission, based on Dr. Castern's referral of Taylor to Dr. Joiner for treatment of her back pain arising from her work-related pelvic injury.

We note that both Code § 65.2-603 and case law use the terms "treating physician" and "attending physician" interchangeably. Compare, e.g., Jensen Press v. Ale, 1 Va. App. 153, 158, 336 S.E.2d 522, 525 (1985) ("[N]either the employer nor its insurance carrier may limit the [authorized] treating physician in the medical specialist, or treating facilities to which the claimant may be referred for treatment." (citation and internal quotation marks omitted)), with Volvo White Truck Corp. v. Hedge, 1 Va. App. 195, 200, 336 S.E.2d 903, 906 (1985) ("Whether medical attention is necessary is a matter for the [authorized] attending physician or the Industrial Commission to determine, not the employer." (citations omitted)).

opinion . . . there [was] a direct causal relationship between the accidental injury and the acute aggravation of the pre-existing depression."

Dr. Luedke's colleague, Jackie Wilkerson, Ph.D., a licensed professional counselor, also "treated [Taylor] psychologically" from 2000 through 2003, and then resumed the treatment in September 2004, following the accident. Dr. Wilkerson reported in May 2005 that both she and Dr. Luedke had been "very pleased with the improvement in [Taylor's] psychological well-being up until the time of the accident." Like Dr. Luedke, Dr. Wilkerson stated further "that the accident caused [Taylor] to regress in the psychological well-being that she had achieved."

Dr. Joiner, on the other hand, opined in a May 2005 report that Taylor's work-related physical injury "was not of a magnitude or duration that would adversely affect her psychologic [sic] status, based on [his] experience with similar patients."

Taylor sought benefits for both her physical injury and the aggravation of her pre-existing depression. ITT agreed that Taylor suffered a compensable physical injury from the August 9, 2004 accident, resulting in her temporary total disability from August 10 through September 7, 2004, and her partial incapacity from September 8 through October 11, 2004. However, ITT denied Taylor's claim of temporary total disability from October 12, 2004 through February 8, 2005, as a result of disabling depression causally related to her physical injury. Relying on the opinions of Drs. Luedke and Wilkerson, the deputy commissioner ruled in Taylor's favor on this contested matter. The deputy commissioner found that Drs. Luedke and Wilkerson were "much better positioned" than Dr. Joiner "to assess causation." Unlike Dr. Joiner, their "lengthy association with the claimant . . . afforded them an opportunity to compare her pre- and post-injury mental state." The deputy commissioner also noted that Dr. Joiner was "neither a

- 3 -

psychologist nor a psychiatrist," and was "addressing an area beyond his expertise as a physiatrist."[2]

Upon review, the full commission affirmed the deputy commissioner's ruling. The full commission, in assessing causation, likewise gave greater weight to the opinions of Drs. Luedke and Wilkerson, who were "claimant's treating mental health care doctors," than "the opinion of Dr. Joiner, a physiatrist." As the full commission further explained, in footnote 1 of its opinion:

> In deferring to Drs. Luedke and Wilkerson with respect to the status of the claimant's emotional health, we do not ignore the fact that Dr. Joiner has served as an authorized treating physician for the claimant's industrial injuries. However, Drs. Luedke and Wilkerson have also provided treatment for the claimant and, as such, constitute "treating physicians" when considering the weight that should be given to their opinions. Moreover, in our view, Drs. Luedke and Wilkerson are better qualified than Dr. Joiner to render opinions regarding the claimant's mental health and her work capacity relative to her psychological problems.

## II. ANALYSIS

ITT argues the commission erred as a matter of law in finding that Taylor's disabling depression was causally related to her workplace accident because, in doing so, it deferred to the opinions of Taylor's psychiatrist, Dr. Luedke, and psychologist, Dr. Wilkerson, as "treating physicians." ITT asserts that Drs. Luedke and Wilkerson were merely Taylor's "personal doctors," and not "authorized treating physicians" pursuant to Code § 65.2-603, for purposes of adjudicating Taylor's workers' compensation claim. Thus, according to ITT, the commission erroneously placed Drs. Luedke and Wilkerson "on equal footing with the status of Dr. Joiner,"

---

[2] In concluding that aggravation of Taylor's pre-existing depression was a compensable consequence of her work-related injury, the deputy commissioner pointed out that his ruling was based on "well-established precedent," which provides that "'the employer takes the employee as [it] finds [her]. If the accident accelerates or aggravates a pre-existing condition, the injured party is entitled to compensation.' [quoting Pendleton v. Flippo Constr. Co., 1 Va. App. 381, 384, 339 S.E.2d 210, 212 (1986)]." See Yellow Freight Systems, Inc. v. Robinson, 37 Va. App. 436, 441-43, 559 S.E.2d 381, 383-84 (2002) (injury caused aggravation of pre-existing depression).

who was an authorized treating physician, when the commission weighed the three doctors' respective opinions on the issue of causation and gave "greater weight" to the opinions of Drs. Luedke and Wilkerson. ITT also contends the commission should have given no weight to the opinion of Dr. Wilkerson because she was a psychologist, and not a medical doctor.[3]

First, Drs. Luedke and Wilkerson were clearly Taylor's treating physicians, as found by the commission. Both treated Taylor for depression for a number of years prior to her workplace accident, and continued to treat her throughout the relevant period following the accident. It is axiomatic that a physician who administers such ongoing professional care, i.e., treatment, to a patient is a "treating physician." See Lee v. Bourgeois, 252 Va. 328, 332, 477 S.E.2d 495, 497 (1996) (reversing trial court's ruling that defendant medical doctor's "function was that of 'a teacher and consultant to residents, as opposed to a treating physician administering medical care to patients'"); see also Crenshaw v. Mony Life Ins. Co., 318 F. Supp. 2d 1015, 1022-23 (S. Dist. Cal. 2004) ("Courts . . . have consistently held that a treating physician is one who maintains an ongoing treating relationship with a patient, as opposed to a consulting physician who has only seen the patient on one occasion."); Cusack v. Callahan, 991 F. Supp. 1268, 1272 (D. Kan. 1998) ("A 'treating physician' is a doctor 'who has or has had an ongoing relationship' with the plaintiff." (quoting 20 C.F.R. § 404.1502)).

Second, the commission, in assessing Taylor's disabling depression, did not effectively confer upon Drs. Luedke and Wilkerson the status of "authorized treating physicians" within the

---

[3] Because of our decision on these issues, we need not address ITT's other arguments challenging the commission's ruling on Taylor's psychological disability claim, as they are premised upon the commission's alleged error regarding the manner in which it weighed the opinions of Drs. Luedke and Wilkerson against the opinion of Dr. Joiner on the issue of causation. Indeed, ITT's counsel conceded at oral argument that this appeal is based entirely upon ITT's opposition to the second sentence in footnote 1 of the commission's opinion. There, the commission stated, "Drs. Luedke and Wilkerson . . . also provided treatment for the claimant and, as such, constitute 'treating physicians' when considering the weight that should be given to their opinions."

meaning of Code § 65.2-603, in violation of the procedural dictates of that statute. Whether Drs. Luedke and Wilkerson were "authorized" to treat Taylor under the statute was not an issue before the commission, and it rendered no opinion in that regard. Rather, the commission's decision was limited to its assessment of Taylor's disability claim. See Jones v. Volvo Trucks North America, Inc., VWC File No. 211-68-90, 2004 VA Wrk. Comp. LEXIS 195 (May 7, 2004). In Jones, the commission based its finding of a compensable change of condition upon the opinion of claimant's treating orthopedic surgeon, Dr. Chandler, without determining that he was claimant's authorized treating physician. As with Drs. Luedke and Wilkerson in the instant case, the issue of whether Dr. Chandler was an "authorized treating physician" as opposed to an "unauthorized treating physician" was not before the commission for adjudication. Id. at *4-*6. Nevertheless, "[t]he status of [Dr. Chandler's] 'authorization,' or lack thereof, [did] not render his opinion unreliable." Id. at *6. As the commission explained, "[d]isability assessment is a separate issue from treatment authorization." Id. at *4. Consequently, "[t]here is no requirement that only an authorized treating physician's opinion can be accepted to prove disability." Id. at *7. By contrast, treatment authorization is relevant to the issue of whether the employer is required to pay for the doctor's treatment, which was not before the commission for decision at that time, nor in the instant case. Id. at *6-*7.

This distinction was also made clear in Corbin v. Richmond (City of) Fire Dept., VWC File No. 197-10-33, 2003 VA Wrk. Comp. LEXIS 1004 (June 25, 2003). In Corbin, as here, claimant's treating psychologist opined that claimant was disabled as a result of an emotional dysfunction causally related to a workplace injury. Id. at *11. The issue of whether the psychologist was "authorized" to treat the claimant was not before the commission. Id. at *9. In rejecting the employer's challenge to the commission's consideration of the psychologist's opinion regarding disability, the commission explained, just as it did in Jones, that "[t]he issue of

- 6 -

authorization only becomes relevant when a claimant is seeking to recover medical expenses incurred in connection with treatment that he has received from a health care provider who has not been approved by the employer or another authorized physician." Corbin, at *9. Because the claimant was only seeking compensation for his disability, "whether or not [his psychologist] constituted an 'authorized' treating doctor under the Act [was] technically irrelevant in [the] case." Id. at *10. See Beale-Zajdel v. Alexandria Hospital, VWC File No. 203-07-83, 2001 VA Wrk. Comp. LEXIS 4510, at *7-*8 (Dec. 11, 2001) ("[A]n employer may not be responsible for the cost of medical treatment provided by an unauthorized treating physician. However, this does not invalidate the physician's opinion regarding the claimant's work capacity.").

Finally, it was within the commission's discretion, when deciding causation, to give greater weight to the opinions of Drs. Luedke and Wilkerson, as Taylor's "treating physicians," than the opinion of Dr. Joiner, as an "authorized treating physician," a determination we will not disturb on appeal. "[W]e defer to the commission in its role as factfinder." Tuck v. Goodyear Tire & Rubber Co., 47 Va. App. 276, 282, 623 S.E.2d 433, 436 (2005) (citation omitted). "Questions raised by conflicting medical opinions" are factual issues, and as such "must be decided by the commission." Penley v. Island Creek Coal Co., 8 Va. App. 310, 318, 381 S.E.2d 231, 236 (1989) (citation omitted). The same is true of the commission's actual determination regarding causation, based on such opinions, which is a factual finding. Tex Tech Ind., Inc. v. Ellis, 44 Va. App. 497, 504, 605 S.E.2d 759, 762 (2004). "This appellate deference is not a mere legal custom, subject to a flexible application, but a statutory command making clear that the commission's decision 'shall be conclusive and binding as to all questions of fact.' [Code § 65.2-706(A)]. Medical evidence, therefore, remains 'subject to the commission's consideration and weighing.'" Central Va. Obstetrics & Gynecology Assocs., P.C. v. Whitfield, 42 Va. App. 264, 279, 590 S.E.2d 631, 639 (2004) (quoting Wolfe v. Va. Birth-Related Neuro.

Injury Comp. Pgm., 40 Va. App. 565, 580, 580 S.E.2d 467, 474 (2003)).  The fact that there is

"'contrary evidence in the record is of no consequence if there is credible evidence to support the

commission's finding.'"  Id. (quoting Wolfe, 40 Va. App. at 580, 580 S.E.2d at 474).  And in

making that determination, we do not "retry the facts, reweigh . . . the evidence, or make [our]

own determination of the credibility of the witnesses."  Lee County Sch. Bd. v. Miller, 38

Va. App. 253, 260, 563 S.E.2d 374, 378 (2002) (citation and internal quotation marks omitted).

These principles are equally applicable to the opinions of both Dr. Wilkerson, as a

clinical psychologist holding a Ph.D. degree, and Dr. Luedke, as a psychiatrist.  It is well

established that the commission may accept as medical evidence "[d]iagnos[es] and disability

opinions . . . from practitioners of the healing arts licensed under Virginia Code [§] 54.1-2929

and Code [§] 54.1-2940.  These practitioners include not only psychiatrists, who are medical

doctors, but also clinical psychologists with Ph.D.s."  Chicas-Bernard v. Jack Sprague, L.L.C.,

VWC File No. 218-55-39, 2006 VA Wrk. Comp. LEXIS 316, at *12 n.2 (April 11, 2006); see

Merrill v. The Traditional Golf Club at Stonehouse, VWC File No. 219-15-97, 2005 VA Wrk.

Comp. LEXIS 1129, at *22-*23 (December 6, 2005); Chan v. Carmax Auto Superstore, VWC

File No. 203-81-66, 2004 VA Wrk. Comp. LEXIS 718, at *7-*8 (October 4, 2004); Baer v. Ezra

Yu/Dalestone Jewelry Collection, Inc., VWC File No. 205-59-80, 2002 VA Wrk. Comp. LEXIS

1538, at *9 (August 5, 2002).  ITT's reliance on John v. Im, 263 Va. 315, 559 S.E.2d 694 (2002),

in challenging the commission's deference to Dr. Wilkerson's opinion, is misplaced.  There, the

Supreme Court held that the psychologist was not qualified to render "an opinion concerning the

causation of a particular *physical* human injury."  Id. at 321, 559 S.E.2d at 697 (emphasis added).

Here, Dr. Wilkerson's opinion was limited to the cause of Taylor's psychological impairment, an

opinion she was qualified to render.  See O'Rourke v. Vuturo, 49 Va. App. 139, 152-53, 638

S.E.2d 124, 130 (2006) (distinguishing <u>John</u> where mental health experts testified regarding a psychological, rather than a physical, injury).

ITT's reliance upon the general rule that "great weight" should be given to the opinion of the treating physician, <u>see, e.g.</u>, <u>C.D.S. Const. Services v. Petrock</u>, 218 Va. 1064, 243 S.E.2d 236 (1978); <u>Pilot Freight Carriers, Inc. v. Reeves</u>, 1 Va. App. 435, 339 S.E.2d 570 (1986), in support of advancing Dr. Joiner's opinion over that of Drs. Luedke and Wilkerson, is also misplaced. Drs. Luedke and Wilkerson were Taylor's treating physicians, along with Drs. Joiner and Castern. However, the commission found that Drs. Luedke and Wilkerson were the most qualified to render an opinion regarding the cause of Taylor's debilitating depression. Furthermore, as indicated above, "the evidence of [any given treating] physician . . . is not binding on the [c]ommission. The probative weight to be accorded such evidence is for the [c]ommission to decide; and if it is in conflict with other medical evidence, the [c]ommission is free to adopt that view which is most consistent with reason and justice." <u>C.D.S. Const.</u>, 218 Va. at 1071, 243 S.E.2d at 241 (citation and internal quotation marks omitted); <u>see, e.g.</u>, <u>Princess Anne Builders, Inc., v. Faucette</u>, 37 Va. App. 102, 112-13, 554 S.E.2d 113, 118-19 (2001) (affirming commission's adoption of consulting physician's opinion over that of treating physician); <u>Pilot Freight Carriers</u>, 1 Va. App. at 439, 339 S.E.2d at 572 (same).

For these reasons, we affirm the commission's award of benefits to Taylor for the period during which it found her to be psychologically disabled as a consequence of her work-related physical injury.

<u>Affirmed.</u>